Argued March 7, decided March 26, 1912.

## GRINDSTAFF v. MERCHANTS' INVESTMENT & TRUST CO.

[122 Pac. 46.]

BROKERS—COMMISSIONS—WHEN EARNED.

1. A broker employed to procure a purchaser for a commission earns the commission when he produces a purchaser ready, able, and willing to buy on the terms of the owner, and either obtains a binding agreement from him to purchase, or brings the owner and the purchaser together so that the owner finds a purchaser.

BROKERS—COMMISSIONS—WHEN EARNED.

2. An owner listed his property for sale with two brokers without giving either an exclusive option to sell. One of the brokers interested a third person in the property, but he declined to purchase on the terms submitted by the owner. Thereafter the other broker conducted negotiations with the third person resulting in a sale. The owner took no part in the transaction except to accept the full price and convey the property. *Held,* that the first broker had not earned commissions.

From Multnomah: MELVIN C. GEORGE, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is an action by W. H. Grindstaff and Geo. D. Schalk, partners, doing business under the firm name of Grindstaff & Schalk, against the Merchants' Investment & Trust Company, a corporation.

Plaintiff's sue to recover a commission for procuring a purchaser for property of defendant, known as "The Quelle," at Sixth and Stark streets, in Portland. Prior to July 13, 1905, the property had been for sale for some time, and both plaintiffs and Stearns, another broker, had it listed for sale from defendant; but neither had an exclusive option thereon. On or about July 6, 1905,

plaintiffs met Gordon, who was seeking an investment and who eventually purchased The Quelle, showed him the property, and interested him therein. Just before this time defendant had raised the price of the lot to $80,000, $45,000 to be paid in cash and the balance on time at 6 per cent interest. Plaintiff's previous option had expired, and Grindstaff saw Mr. Hoyt, who was acting for defendant, and told him he had a prospective customer for the lot. Hoyt told him to sell it for $80,000 on a commission of $1,750. Gordon was pleased with the property, and Grindstaff took him to defendant's office that he might examine the party-wall agreement and the lease, which had five years to run, at which time he was introduced to Hoyt, who showed him the lease and agreement. Gordon objected to the price as too high and the rent too low and also to the high rate of interest, as under those conditions the property could not render a reasonable income on his money. Gordon returned to San Francicso on July 7th, and plaintiffs had no further communication with him. Stearns met him on the afternoon of the day he left and, among other properties, called his attention to The Quelle. Gordon told him he had been considering that property with Grindstaff but had turned it down because it would not pay over 2½ per cent on the investment. Stearns thereafter, to avoid Gordon's objections to the purchase, offered to give him the benefit of $1,000 on his commission and to procure for him a loan at 5 per cent., upon which terms the sale was consummated, and defendant's agent took no part in the transaction, other than to accept the price, $80,000, and to convey the property. The sale was concluded on July 17th, and the deed made later. Defendant moved for a nonsuit at the close of plaintiff's testimony, which was denied, and also, at the close of the case, asked for an instructed verdict in its favor, which motion was also

denied.   A verdict was rendered in favor of plaintiff, and from the judgment thereon defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. William T. Muir* and *Mr. J. B. Kerr,* with an oral argument by *Mr. Kerr.*

For respondents there was a brief over the names of *Messrs. Malarkey, Seabrook & Stott,* with an oral argument by *Mr. Dan J. Malarkey.*

Opinion by MR. CHIEF JUSTICE EAKIN.

1. It has been frequently said by this court that a broker being employed as such has earned his commission when he has produced a purchaser ready, able, and willing to buy on the owner's terms.   If he does this and places the owner in a position to deal with the person he has induced to become the buyer, his contract is performed; but as said in *York* v. *Nash,* 42 Or. 321, 330 (71 Pac. 59, 62) :

"That a real estate broker finds a purchaser able, ready, and willing to purchase, upon the terms of the seller, is not enough, under the apparent weight of authority, to entitle him to his commission; but he must either obtain a binding agreement to purchase the property, or bring the parties together, so that his principal also finds a purchaser."

2. And the question here is:   Did plaintiffs fulfill these conditions, or was there sufficient evidence to require that question to be submitted to the jury?   They did not induce Gordon to buy nor to accept the terms of the defendant. Neither did he finally accept of those terms as presented by plaintiffs.   He eventually purchased by reason of additional inducements held out to him by Stearns.   Therefore plaintiffs did not produce a purchaser ready and willing to purchase; nor bring together such a purchaser and

the defendant, so that defendant found a purchaser. But plaintiffs contend that they had a prospective purchaser in Gordon, and that defendant colluded with Stearns to defeat plaintiffs' efforts and through Stearns consummated a sale to plaintiffs' customer, within the holding in *Jennings* v. *Trummer*, 52 Or. 149 (96 Pac. 874: 23 L. R. A. [N. S.] 164: 132 Am. St. Rep. 680) ; but the evidence does not bring the case within the principle there stated. Here defendant's officers took no part in the negotiations and at no time talked to Gordon regarding the sale nor with Stearns, except without knowledge of the identity of the customer, and after several refusals gave him four days' exclusive option. Until Gordon had accepted the offer of the property, defendant did not know he was the customer, and remained neutral between the brokers and received for the lot $80,000. After May 1st defendant had refused to give any written option to sell or the exclusive agency to any one. It was ready to sell to the first one bringing a purchaser and held itself free to sell on its own initiative.

Grindstaff testifies that after May he had no written option, but endeavored to sell it just the same, but that defendant did not want to tie the property up to him. He said it was not going to give another option unless they had a prospective purchaser. The company wanted to be free to dispose of it as it pleased, but at any time they got a customer it was willing to give them time to sell; that it would not give any one an exclusive option unless he had a customer; that he did have an exclusive option for a few days when he had a customer from Tacoma, and he assumed that if he took a customer there that would pay $80,000 defendant would sell and pay his commission; that he took Gordon to defendant's office to look at the lease and the party-wall agreement, but they had no dealings with Hoyt, nor any talk about Gordon's ability to

buy or intentions in that regard. No exclusive option pending the investigations was asked, and defendant was not charged with any duty nor put under obligations thereby to either Grindstaff or Gordon. So far as appears, there was no prospect of a sale by Grindstaff, nor any negotiations pending between him and Gordon. For a period of 10 days plaintiffs did nothing to forward the sale and had no communication with Gordon. Their negotiations had ceased on the 7th of July, and plaintiffs failed to prove a case sufficient to be submitted to the jury. The motion for a judgment of nonsuit should have been allowed.

The judgment is reversed, and the cause remanded.

REVERSED.