# GILLILAND v. JAYNES.

No. 2128.    Opinion Filed October 15, 1912.

Rehearing Denied January 7, 1913.

(129 Pac. 8.)

1.  **BROKERS — Compensation—Performance of Contract.** When a real estate agent has property listed with him for sale, and finds a purchaser ready, willing, and able to buy on the terms on which the property is listed, the fact that he has an agreement with the purchaser that, after the purchase is completed, he may subdivide the property and sell it as town lots for a contingent commission will not defeat his right to recover a commisssion against his original client, which has been earned.

2.  **SAME.** In order for a real estate agent to recover his commission for making a sale which has not been completed, it is necessary for him to find a purchaser who is ready, willing, and able to buy, and to procure a written agreement to buy from the purchaser, which will be enforceable against him, if accepted and signed by the seller, provided the seller and purchaser have not come together, and an oral agreement to buy accepted by the seller.

(Syllabus by Ames, C.)

*Error from District Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by John T. Jaynes against J. W. Gilliland for a commission for the sale of real estate. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*N. A. Gibson* and *H. C. Thurman,* for plaintiff in error.

*De Roos Bailey, J. E. Wyand,* and *Charles A. Moon,* for defendant in error.

Opinion by AMES, C. The first error assigned and dis-

cussed is the action of the court in refusing a peremptory instruction, and the position of the plaintiff in error, hereinafter referred to as defendant, is thus stated in his brief:

"We maintain, first, that a binding contract whereby the plaintiff was to sell property of the defendant as the defendant's agent was not proven at the trial; second, that, if the plaintiff was acting as the agent of the defendant in the sale of defendant's property, the interest which he would have acquired in the purchased property was antagonistic to the interest of his principal, and he is not entitled to any commission; third, that, if the plaintiff was in fact acting as the defendant's agent, he did not so consummate a sale of defendant's property to earn any commission because he never brought together the owner and a purchaser who was ready, willing, and able to buy on the terms named by the owner."

Of these in their order.

Upon the first proposition, it is sufficient to say that there was testimony reasonably tending to support the plaintiff's averment of employment, and this was submitted to the jury for determination, under proper instructions, and their verdict will not therefore be disturbed.

Upon the second proposition, the testimony tended to show that the plaintiff was the agent of the defendant for the sale of land; that he was authorized to sell it for a net price to the defendant of $6,500; that the land was close to the city of Muskogee; that the plaintiff negotiated a sale to certain purchasers for $7,500; that he told the purchaser that this was the net price at which he had the land listed, and that he was making no commission on the sale; that he had an understanding with the purchasers that, after they bought, the land should be platted and sold as an addition to the city of Muskogee; that out of the proceeds of the sale the first $9,000 was to be paid to the purchasers, and the excess to be divided between the plaintiff and the purchasers, provided he sold it out within a certain time. It is contended by the defendant that this is such a relation to the purchasers as to make the agent's interest antagonistic to that of the principal, and therefore to defeat his right to recover a commission. The law does not permit the agent of a vendor to become interested as the purchaser, or as the agent of the purchaser,

in the subject-matter of the agency, but requires of the agent the exercise of good faith toward the principal. *Plotner v. Chillson,* 21 Okla. 224, 95 Pac. 775, 129 Am. St. Rep. 776. In the case at bar, however, the property involved was listed for sale with the plaintiff at a fixed price, and he was permitted to retain as his commission all that he might receive in excess of that price, and we do not think under the facts of this case there was any such relation between the parties as to defeat a right which the plaintiff would otherwise have to recover his commission. The plaintiff was not the purchaser; he was not investing his money in the land, or in any way becoming liable for it. His only relation to the purchase was an understanding with the purchasers that he would put it on the market for them for a contingent commission, to be taken out of the proceeds after they had been reimbursed in full and allowed an agreed profit.

The next question presented is one which presents difficulty. Under the facts in this case, is the plaintiff entitled to recover? The verdict of the jury resolves all the disputed questions in favor of the plaintiff, and under this rule the facts are as follows: The defendant listed his land for sale with the plaintiff at $6,500 net, the plaintiff to have as his commission all that the land might sell for in excess of $6,500. The plaintiff resided in Muskogee and the defendant in Holdenville. Once or twice prior to this transaction the plaintiff requested the defendant to come to Muskogee to close a sale which he had made. The defendant came, and the purchasers failed to buy. The plaintiff then negotiated this deal with the purchasers, and the testimony tended to show that they were ready, willing, and able to buy the land on the terms by which it was listed with the plaintiff. No written agreement was made and signed by the proposed purchasers, nor did they pay any part of the purchase money to the plaintiff or defendant. The plaintiff telephoned the defendant at Holdenville that he had purchasers, and for him to come to Muskogee, bringing the necessary papers to close the deal. The defendant said he was busy at the time, but would come over in a day or two. The next day he wrote the plaintiff that he had concluded not to sell for less than $7,000 net. The

plaintiff again tried to reach him on the telephone, but, when the defendant discovered that the calling party was Muskogee, he declined to talk. Nothing further was done until several months afterwards, when the defendant was in Muskogee and this suit was filed against him. Upon this exact point there is a sharp conflict in the authorities, and the question is not settled in this state. Some of the cases hold that the broker is entitled to his commission for the sale of real estate, though the purchaser never enters into any enforceable contract of sale, if, as a matter of fact, he is willing to comply with the oral contract and the owner declines to do so, and that the agent's duty is ended when he produces a purchaser ready, willing, and able to buy. *Holden v. Starks,* 159 Mass. 503, 34 N. E. 1069, 38 Am. St. Rep. 451; *Carlin v. Lifur,* 2 Cal. App. 590, 84 Pac. 292. Other cases cited as supporting this position are *Stauffer v. Linenthal,* 29 Ind. App. 305, 64 N. E. 643; *McFarland v. Lillard,* 2 Ind. App. 160, 28 N. E. 229, 50 Am. St. Rep. 234; *Ford v. Easley,* 88 Iowa, 603, 55 N. W. 336. But a close examination discloses that these cases are not exactly in point. In the first one the owner and the purchaser entered into a written contract. In the second one the owner and the purchaser met in person, and the owner accepted him as a purchaser without requiring a written contract; while in the third the exact facts on this proposition are not disclosed by the opinion.

On the other hand, there is likewise eminent authority holding that it is necessary for the broker either to effectuate a sale, or where the seller declines to proceed, to present him with a written agreement, signed by the purchasers, which would become enforceable when signed by the seller and take the negotiations for sale out of the statute of frauds. *Wilson v. Mason,* 158 Ill. 304, 42 N. E. 134, 49 Am. St. Rep. 162; *Ormsby v. Graham,* 123 Iowa, 202, 98 N. W. 724; *Grindstaff v. Merchants' Investment & Trust Co.,* 61 Ore. 310, 122 Pac. 46; *Bolton v. Coburn,* 78 Neb. 731, 111 N. W. 780. Other cases tending to support this rule, but not exactly in point, are *Hammond v. Crawford,* 66 Fed. 425, 14 C. C. A. 109; *Gunn v. Bank of California,* 99

Cal. 349, 33 Pac. 1105; *Gilchrist v. Clarke,* 86 Tenn. 583, 8 S. W. 572. In *Wilson v. Mason, supra,* it is said:

"Some of the cases go so far as to hold that the broker is not entitled to his commissions, unless the sale is actually accomplished by the delivery of the deed of the land from the vendor to the vendee and the payment of the purchase money by the latter, or unless it is proven that the sale is prevented by the fault of the vendor. Other cases seem to hold that the broker is entitled to his commissions when the minds of the vendor and purchaser meet in a verbal agreement for the sale by the one and the purchase by the other of the land. We are not inclined to follow either of these classes of cases, regarding them as extreme and exceptional. The true rule is that the broker is entitled to his commissions if the purchaser presented by him and the vendor, his employer, enter into a valid, binding, and enforceable contract. If, after the making of such a contract, even though executory in form, the purchaser declines to complete the sale, and the seller refuses to compel performance, the broker ought not to be deprived of his commissions. He has done all that he can do when he produces a party who is able, and, in binding form, offers to purchase upon the proposed terms. An agreement by a real estate broker to procure a purchaser not only implies that the purchaser shall be one able to comply, but that the seller and the purchaser must be bound to each other in a valid contract. So, where the agreement of the real estate broker is to make a sale, his commission is earned when a contract is entered into which is mutually obligatory upon the vendor and vendee, even though the vendee afterwards refuses to execute his part of the contract of the sale, or purchase. *Parker v. Walker,* 86 Tenn. 566 [8 S. W. 391]; *Coleman v. Meade,* 13 Bush [Ky.] 358; *Francis v. Baker,* 45 Minn. 83 [47 N. W. 452]; *Love v. Miller,* 53 Ind. 294, 21 Am. Rep. 192; *Veazie v. Parker,* 72 Me. 443; *Willes v. Smith,* 77 Wis. 81 [45 N. W. 666]; *Rice v. Mayo,* 107 Mass. 550; *Christensen v. Wooley,* 41 Mo. App. 53; *Love v. Owens,* 31 Mo. App. 501; *Greene v. Hollingshead,* 40 Ill. App. 195; *Short v. Millard,* 68 Ill. 292; *Kerfoot v. Steele,* 113 Ill. 610; *Ward v. Cobb,* 148 Mass. 518 [20 N. E. 174] 12 Am. St. Rep. 587."

The question is of great practical importance, and, there being eminent authority supporting both rules, we find some difficulty in reaching a conclusion. Our own cases only go to the extent of holding that "a real estate agent, authorized to

sell the land of another for a certain price for a certain compensation, or send the seller a buyer, has not earned his commission until he produces a purchaser ready, willing, and financially able to purchase the land upon the terms agreed upon." *Crutchfield v. Webster,* 31 Okla. 142, 120 Pac. 615; *Birch v. Mc-Naught,* 23 Okla. 634, 101 Pac. 1049. But this question was not involved in either of those cases. We are inclined to believe that the weight of authority, as well as the better reason, supports the rule that, in order to recover his commission, the real estate agent must produce a purchaser who is ready, willing, and able to buy, and that the evidence of this fact must be such as would be recognized in a court of justice. The sale of real estate is an important step, which the law requires to be taken in writing, and it is explicitly provided that no contract or agreement for the sale of real estate shall be valid unless it is in writing. These safeguards are designed to prevent fraud, and we are inclined to believe that the rule we adopt will have a tendency to prevent fraud, and will not work any hardship in a just case. If the real estate agent has a purchaser who is ready, willing, and able to buy, it will not be difficult for him to have such purchaser sign an agreement to buy, which will become a valid, binding, and enforceable contract as against the purchaser.

On the other hand, if the real estate agent merely procures a man who says he is willing to buy, his statement does not bind him, and within legal contemplation he has done nothing which the law recognizes. The best evidence of his being willing to buy is his written agreement to do so. In fact, his written agreement is the only thing which can be enforced against him, and his mere word of mouth that he is willing to buy would not be recognized in an action against him to compel specific performance. It would not even be competent evidence as tending to show that he had agreed to buy. In the case at bar the defendant had made one or two trips to Muskogee on previous occasions upon the plaintiff's advice that he had a purchaser for his property, and, when he got there, the purchaser refused to proceed further, and the defendant was helpless, whereas, if the plaintiff had required of the proposed purchaser his signature to

an agreement which would be binding upon him, the purchaser would either have refused to sign, and thereby saved the defendant the expense of the trip, or he would have taken the property when the defendant appeared. In the case at bar the plaintiff testified that the defendant was still willing to sell, but wanted to raise his price from $6,500 to $7,000, and that the purchaser had agreed to buy for $7,500, and that he had an agreement with them by which he was to plat the land as a townsite addition and sell it off on a basis by which he expected to realize further profit. Therefore on the defendant's new offer, he had a commission of $500 for making the sale, and the prospect of profit by platting the land as an addition, and yet he did not secure from the purchasers any part payment of the purchase price, or any written agreement to buy the land, nor did he seek out the defendant for the purpose of urging the sale, but let the whole matter drop, and waited some months until he saw the defendant in Muskogee, at which time he sued him.

We believe the rule which we adopt will have a tendency to require greater care and system in the transaction of the real estate business, will have a tendency to prevent frauds, and will not often prevent the recovery of a commission which is really earned.

The case should be reversed and remanded, with instructions to proceed further in accordance with this opinion.

By the Court: It is so ordered.