REYNOLDS v. ANDERSON.

No. 2812. Opinion Filed May 6, 1913.

(132 Pac. 322.)

1. BROKERS—Real Estate Brokers—Right to Commission. A real estate agent in order to recover commission for the sale of real estate must produce a purchaser, who is ready, willing, and able to buy, upon the terms and conditions agreed upon.

2. SAME—Sale of Realty. The only legal evidence of his intent to comply with those conditions is his written agreement to do so. Hence a real estate agent is not entitled to recover a commission for the sale of real estate, unless he has also (in addition to the foregoing requirements) procured and presented to the seller, from the purchaser, who is ready, willing, and able to buy, an enforceable contract in writing, binding him to take the land according to the terms and conditions agreed upon.

(Syllabus by Robertson, C.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by C. S. Anderson against H. C. Reynolds. Judgment for plaintiff, and defendant brings error. Reversed.

*Harry White* and *Philip E. Mann* (*S. A. Horton,* of counsel), for plaintiff in error.

*H. M. Carr,* for defendant in error.

Opinion by ROBERTSON, C. This is an action by C. S. Anderson against H. C. Reynolds to recover commission alleged to be due for the sale of real estate. The petition charges that Anderson was a real estate agent living at Stratford, Okla., that Reynolds owned a farm in Garvin county. that he wanted to sell; that he listed the same with Anderson at $65 per acre, or a total of $12,350, and was to pay Anderson 5 per cent. of the amount realized from the sale of the land when a sale had been made. Anderson charges that immediately upon the listing of the farm with him, he proceeded to advertise the same in newspapers and by circulars; that in a few months he secured a buyer for the land at the agreed price, drew a deed for the same

which was signed by defendant, but not by his wife, she refusing to sign it; that the prospective purchaser waited for two months for the wife to sign the deed, but that defendant failed and refused to deliver the deed with his wife's signature, but that he (Reynolds) subsequently sold the farm to another person; that by reason of his failure to complete the sale he became liable to plaintiff in the sum of $617.50 as commission. To this petition defendant filed a general denial. The case was tried to a jury and resulted in a verdict for the plaintiff for the full amount sued for. The evidence shows that the defendant listed his farm by oral contract with the plaintiff as alleged in the petition, and that the plaintiff advertised the same and endeavored to secure a purchaser; that during the early fall of 1909 a real estate firm in Oklahoma City by the name of Witt & Grubb, wrote to Anderson, the plaintiff, that they had a buyer for the farm and asked him to divide the commission with them in case they furnished a purchaser, to which he agreed; that he also received a letter from the defendant about this time in which he stated that he could sell the farm if Anderson would divide the commission with Witt & Grubb; that the purchase was to be made by a man named W. C. Kandt, who was negotiating for the farm through the firm of Witt & Grubb; that the defendant was to take a house and lot in Oklahoma City in trade and $6,500 in addition, $5,000 of which was to be in cash secured by a first mortgage on the farm, and the balance of $1,500 to be secured to Reynolds by second mortgage on the farm.

It also appears that while Reynolds was in Stratford, about this time, he called on Anderson and talked the matter over with him, and Anderson drew up a deed for the land, and Reynolds signed the same and put the deed in his pocket with the evident intention of taking it to his wife and securing her signature. Reynolds and his wife were living apart during this time. The wife refused to sign the deed, leastwise Reynolds never delivered it to Kandt, and Kandt, after waiting for two

months, or more, notified Reynolds that on account of his fail-
ure to deliver the deed with his wife's ·signature that the deal
was off. The evidence further shows that Anderson had noth-
ing whatever to do with the trade; that he never saw Kandt
and never had any correspondence with him; that Witt &
Grubb negotiated the deal. Anderson claims his commission
solely by reason of his oral contract to sell the farm; he does
not claim to have made the· sale, or to have produced the pur-
chaser, although he insists that he had the exclusive agency for
the sale of the farm. It is further shown that after this
Reynolds sold the land himself to another party. There was
no contract in writing of any kind or character between the pros-
pective purchaser, Kandt, and the owner, Reynolds. The amend-
ed petition was not challenged by motion or demurrer; no
objection was made to the introduction of testimony thereunder,
nor was there any request for an instructed verdict. The pe-
tition is barren of any allegation with reference to a written
contract of purchase from Kandt, nor is it anywhere claimed
by plaintiff that any such contract was entered into between
Kandt and Reynolds, or that Kandt ever offered such a con-
tract to Reynolds for his signature, or that any act of his
(Kandt's) would excuse him from the provisions or' require-
ments of the statute of frauds, or give Reynolds an opportunity
to compel specific performance from him in case a deed had
been offered to him for the farm.

Many alleged errors are raised and urged by counsel in
their petition in error and brief, and each specification has been
given careful consideration, and aside from one assignment,
which will be noted hereafter, we do not think it necessary to
give them any consideration, inasmuch as the disposition of the
one referred to will effectually dispose of the case. The al-
leged error to which reference has been made may be consid-
ered under the first, second, third, fourth, or eighth assignment
of error, and relates to the insufficiency of the allegations of the
petition to state, a cause of action, and the total failure of proof
on the question of the existence of a binding or enforceable

contract of sale between Reynolds, the owner, and Kandt, the alleged prospective purchaser. In fairness to the lower court it may be said that while this question was not presented at the trial, except inferentially, yet it is urged here by plaintiff in error.

The law on this point in this state had not then been determined; but, since the trial of this cause in the district court, this question has been presented to, considered, and passed upon by this court, and the law on this question settled, as may be seen by reference to the case of *Gilliland v. Jaynes,* 36 Okla. —, 129 Pac. 8. In that case, the facts of which are not wholly dissimilar to those in this, the court says:

"We are inclined to believe that the weight of authority, as well as the better reason, supports the rule that, in order to recover his commission, the real estate agent must produce a purchaser who is ready, willing, and able to buy, and that the evidence of this fact must be such as would be recognized in a court of justice. The sale of real estate is an important step, which the law requires to be taken in writing, and it is explicitly provided that no contract or agreement for the sale of real estate shall be valid unless it is in writing. These safeguards are designed to prevent fraud, and we are inclined to believe that the rule we adopt will have a tendency to prevent fraud, and will not work any hardship in a just case. If the real estate agent has a purchaser who is ready, willing, and able to buy, it will not be difficult for him to have such a purchaser sign an agreement to buy, which will become a valid, binding, and enforceable contract as against the purchaser. On the other hand, if the real estate agent merely procures a man who says he is willing to buy, his statement does not bind him, and within legal contemplation he has done nothing which the law recognizes. The best evidence of his being willing to buy is his written agreement to do so. In fact, his written agreement is the only thing which can be enforced against him, and his mere word of mouth that he is willing to buy would not be recognized in an action against him to compel specific performance. It would not even be competent evidence tending to show that he had agreed to buy."

It must not be forgotten that the record in this case shows that Witt & Grubb procured Kandt to make the offer of pur-

chase; Anderson never saw or talked to Kandt; the contract between Anderson and Reynolds was for the sale of the premises, while the prospective purchaser furnished by Witt & Grubb depended on a trade for the same. To be sure it seems as though Reynolds was willing to make the trade, and as an incident showing such intent may be cited the fact that Anderson drew a deed from him to Kandt, which Reynolds signed, put it in his pocket, and took it away from Anderson's office ostensibly to secure his wife's signature thereto; but the signing of the deed was not conclusive evidence as to Reynolds' intention at that time, inasmuch as the deed was never delivered, and Kandt refused to accept the same without the signature of Reynolds' wife. Under the authority of *Gilliland v. Jaynes, supra,* and the cases therein cited, there never was a complete consummation of the proposed contract between Reynolds and Kandt, and, of course, Anderson had no cause of action at the time this suit was instituted, even conceding that it was through his efforts that the parties were brought together. Kandt did nothing that would take his proposed agreement out of the statute of frauds, or give to Reynolds a cause of action for specific performance against him. Before a cause of action existed in Anderson's favor and against Reynolds, it was the duty of Anderson, under the terms of his contract, to have secured a binding and enforceable contract in writing from Kandt and to have presented the same to Reynolds, when, if he refused to accept such offer, a cause of action would have accrued, and Reynolds would have been liable for the commission. We need but refer to the most excellent reasons, given by Ames, C., in *Gilliland v. Jaynes, supra,* for the necessity of these requirements, and the present case is but an emphasis for the rule there announced. Under Anderson's claims in the present case he insists on a commission for the sale of the farm when he had, so far as we are able to see, absolutely nothing to do with procuring the prospective purchaser; his contract with Reynolds was oral, and its terms cannot be ascertained, for Anderson claimed it gave to him the exclusive right to sell the farm, while

Reynolds claimed the very opposite. This question was not decided by the general verdict of the jury; it was not an issue in the case, was not alleged in the petition, or treated in any manner by the court's instructions. So, too, there is a diversity of opinion between Reynolds and the other parties as to the terms of the proposed trade with Kandt. Were it not for the law as announced in the case above, we might very properly leave all these collateral questions for the determination of the jury; but when it is the law that these contracts shall be in writing in order, among other things, that the intent of the parties may be ascertained without doubt or speculation for the very purpose of preventing misunderstandings and attendant lawsuits, and no compliance with such law has been attempted by the parties, it is, and should be, the policy of the courts to refuse to interfere in their quarrel, but to leave them where they were before this action was begun. It would impose no hardship on any one to comply with the requirements of the law as hereinabove announced, and, as is evidenced by the instant case, it would prevent unnecessary litigation and trouble.

It has been suggested that the rule in this state applicable to this question has been settled by the case of *Carson v. Vance,* 35 Okla. 584, 130 Pac. 946, and that the doctrine announced in *Gilliland v. Jaynes, supra,* is in conflict with that holding and with the holding of this court in former decisions on the subject; but a careful reading of that case, together with the other Oklahoma cases referred to therein, shows that there is no conflict, either real or apparent. Thus in *Carson v. Vance, supra,* the question of a valid, binding, and enforcible contract between the seller, and prospective purchaser, was not raised, nor was it in any wise considered by the court. It is presumed that the contract therein referred to as having been made and entered into by the parties was a legal, binding, and enforceable contract, such as is required by the statute of frauds, in connection with the sale of real estate; there is nothing in the record to indicate the contrary; the court below must have found it to be such, and the failure of counsel in that case to urge its

invalidity, and the failure of the court to treat, or in any wise consider, the same, is conclusive evidence to our mind that' there was no such question in that case, and, not being in the case, it was, of course, unnecessary to, and the court did not, consider or decide the same. In that case, the question considered was: "When has a real estate broker earned his commission?"

The court said in answer:

"A real estate agent authorized to sell land for another at a stated price for a certain compensation has earned his commission when he produces a purchaser ready, willing, and financially able to purchase the land upon the terms and conditions agreed upon."

The law provides that one of these terms, or conditions, which every contract for the sale of real estate must contain, is that the parties thereto shall express their intent in a binding, enforceable contract *in writing*. The reasons for this salutary provision of statute are so numerous that it is unnecessary to here set them out. There was no binding contract in the case at bar between the prospective purchaser and the seller, and therefore the agent was not entitled, under the pleadings and the evidence, to recover. This is a requirement of law that cannot be waived impliedly by either of the parties, although we do not attempt to say that a seller might not in any case be estopped by his actions from availing himself of the protection of the law in this regard. But of this we venture no opinion at this time, contenting ourselves with the observation that no such estoppel exists in this case. There are many other, but minor, questions raised in the petition in error, but their consideration is rendered unnecessary by the above conclusion. We feel that the rule announced in *Gilliland v. Jaynes, supra,* not only states the law as it is, but as it should be.

Entertaining these views, it follows that the judgment of the lower court should be reversed.

By the Court: It is so ordered.