# FIRST NATIONAL BANK OF COWETA v. BRUMBAUGH.

No. 6378.  Opinion Filed January 11, 1916.

Rehearing Denied February 15, 1916.

(154 Pac. 1172.)

1.  **TRIAL—Action by Broker for Commission—Instructions—Evidence.**  Where a real estate broker is suing for a commission for the sale of real estate, which the uncontroverted evidence shows was actually made, and upon the terms the land was listed with him, it is not prejudicial error for the court to refuse to instruct. the jury that before he can recover he must have produced a purchaser ready, able, and willing to buy it, and upon the terms agreed upon. For while correctly stating a general principle of law, such requested instruction has no specific application to the facts in the case.

2.  **SAME.**  Where a sale of real estate has been completed, and the agent is suing for his commission, it is not error for the court to refuse to instruct the jury that before the broker can recover his commission for the sale he must have procured a written, enforceable contract from the purchaser, binding him to take the land upon the terms agreed upon. This rule is only applicable when the agent is suing for a commission where the sale was never consummated.

(Syllabus by Brett, C.)

*Error from County Court, Wagoner County;*
*W. T. Hunt, Judge.*

Action by W. T. Brumbaugh against the First National Bank of Coweta, Okla.  Judgment for plaintiff, and defendant brings error.  Affirmed.

*J. C. Pinson, Watts & Molony,* and *Edward M. Gallaher,* for plaintiff in error.

*Z. I. J. Holt* and *Frank L. Haynes,* for defendant in error.

Opinion by BRETT, C.  The defendant in error was a real estate broker at Broken Arrow, and sued the plaintiff in error, the First National Bank of Coweta, in the lower court to recover $122.06, alleged to be due him as a commission earned in the sale of a piece of real estate owned by the plaintiff in error.  The parties will be referred to as they appeared in the lower court; that is, defendant in error will be referred to as plaintiff, and plaintiff in error as defendant.

The evidence on behalf of the plaintiff in this case is to the effect that defendant listed this property with him at $30 per acre, and agreed to give the plaintiff a commission of $1 per acre for his services in procuring a purchaser; that he telephoned the defendant that he had a buyer, and the defendant, by its president, came to Broken Arrow, met the proposed purchaser, who agreed to pay $30 per acre for the farm.  But it developed that there was some defect or irregularity in the title, which the defendant thought could be remedied, and the deal was suspended until the title could be cleared. It took longer to do this than was anticipated, and before this had been done the bank changed presidents.  But when the proposed purchaser learned that the title was clear, he went to the office of plaintiff and found he was not there, and then proceeded to Coweta, and closed the deal with the new president of the bank on the terms agreed to between him and the former president of the defendant bank; the only change being that under the first agreement he was to get one-third of the growing crop, and under the terms upon which he actually purchased, as the crop had been gathered and disposed of, he got a reduction in the price he was to pay of about $100 as compensation for the portion of the crop he was

to get under the first agreement. The purchaser testified that he was ready, willing, and able to buy the farm at $30 per acre at all times, and would have closed the deal at the first meeting but for the defect of the title; that the deal was not called off, but only suspended until the title could be perfected; and that as soon as this was done he did buy the land upon the terms agreed upon at the first meeting, except that he was allowed something less than $100 in lieu of the one-third of the crop, which had been disposed of.

The only material conflict in the evidence is that the former president of the bank testified that when the purchaser was unwilling to accept the title, the deal was dropped. The jury returned a verdict for the plaintiff, which became a judgment, and the defendant appeals from this judgment.

The defendant in its argument, in its brief, bases its claim for reversal upon the refusal of the court to give three requested instructions.

The first request was for a peremptory instruction to find for the defendant. But the defendant does not seriously insist upon this, and we will only say it was not error to refuse this request.

The second requested instruction is to the effect that before a real estate agent is entitled to recover a commission for the sale of real estate, he must procure a purchaser who is ready, able, and willing to buy upon the terms and conditions agreed upon; and if he fails to find such a purchaser, he cannot recover. That request as a general statement is correct, but we fail to see where it has any application to the facts in this case. The evidence of all the witnesses is that the plaintiff in the first in-

stance procured the purchaser, and that he was ready, able, and willing, at all times, to buy, and did buy, as soon as the cloud was removed from the title, at $30 per acre, the price placed on the land by the defendant; the only conflict in the evidence being the testimony of the president of the bank, with whom the purchaser first negotiated, to the effect that when the purchaser first objected to the title, it was agreed that the deal should be dropped. But on this point the court instructed the jury if they found "that the negotiations for the sale of said land was dropped, and the commission contract between the plaintiff and the bank was mutually abandoned, then it will be your duty to find for the defendant." This was really the only controverted fact in the case, and the jury under this instruction found in favor of the plaintiff; and there is an abundance of evidence to sustain this finding. Under the facts. in this case, and in view of the instructions given by the court, which were very favorable to the defendant, we do not think the defendant was prejudiced by the court refusing to give this requested instruction.

The third requested instruction is:

"You are further instructed that to entitle the plaintiff, a real estate agent, to recover a commission for the sale of real estate, he must procure and present to the seller, from a purchaser, who is ready, willing, and able to buy, an enforceable contract in writing, binding him to take the land according to the terms and conditions agreed upon, and in this connection you are instructed that if the plaintiff fails to procure such a contract between the purchaser and the seller, you should find for the defendant."

This instruction is correct when an agent is suing for a commission, where the sale was never consummated, but has no application to the facts in the case at bar,

and it would have been error for the court to have given it. And in the cases cited by defendant as supporting this rule, we note that without exception those were cases where the agent was claiming a commission where the sale was never consummated, and claiming his commission on the ground that he had performed his duty by procuring a purchaser able, ready, and willing to buy upon the terms agreed upon, and that the sale was not consummated by reason of the fault of the owner. And this court held in *Gilliland v. Jaynes*, 36 Okla. 563, 129 Pac. 8, 46 L. R. A. (N. S.) 129:

"* * * That it is necessary for the broker either to effectuate a sale, or where the seller declines to proceed, to present him with a written agreement, signed by the purchasers, which would become enforceable when signed by the seller and take the negotiations for sale out of the statute of frauds."

And it is true that in cases where the sale was never consummated, an enforceable contract is the best evidence that the agent had procured a purchaser ready, able, and willing to buy on the terms agreed upon. But in the case at bar the sale was actually effectuated, and the fact that there was a lapse of time between the beginning of the negotiations and a final consummation of the deal is immaterial, since the evidence showed the deal was never dropped, but was only suspended until the title was perfected, and that the purchaser stood ready, able, and willing to close the deal at all times, on the terms fixed by the defendant, and did close it on these terms as soon as the title was clear. The instruction requested, therefore, had no application to the facts in this case. *Schlegel v. Fuller*, 48 Okla. 134, 149 Pac. 1118; *Doub & Co. v. Taylor*, 48 Okla. 713, 150 Pac. 687; *Gil-*

*lett v. Corum,* 7 Kan. 156; *Ratts v. Shepherd,* 37 Kan. 20, 14 Pac. 496; *Long and Place v. Thompson,* 73 Kan. .76, 84 Pac. 552.

Finding no prejudicial error in the record, we think the judgment should be affirmed.

By the Court: It is so ordered.