[No. 13162. Department Two. March 15, 1916.]

## E. E. LITTLEFIELD, *Respondent*, v. F. A. BOWEN *et al.*, *Appellants.*[1]

ACTIONS—JOINDER—ARISING OUT OF SAME TRANSACTION. Where a broker was to be paid his commissions by the two parties to the exchange of properties, upon execution of the papers, and the exchange was prevented by the default of one of the parties, the broker may unite in one action a cause on contract for the half of the commissions to be paid, and another cause for damages in preventing the performance of the other party, under Rem. & Bal. Code, § 296, authorizing the joinder of causes of action that "arise out of the same transaction."

BROKERS—COMMISSIONS—CONTRACT — BREACH — LIABILITY. Where both parties agreed to unite in paying a broker's commission, upon the execution of papers effecting an exchange of properties, which was prevented solely by the default of one of the parties, such party is liable for the entire commissions.

RECORDS—RECORDING PAPERS—DAMAGES—CAUSING CLOUD ON TITLE. A broker is not liable in damages for causing the recording of a contract relating to his commissions upon effecting an exchange of properties, on the theory that it creates a cloud on title, as no legal rights are violated.

TENDER—WAIVER. Where a transfer by one party to an exchange of properties was refused by the other, tender of a deed is not necessary.

EVIDENCE—BEST AND SECONDARY—EVIDENCE OF TITLE. The rule that only the best evidence of title, i. e., the muniments of title such as deeds, etc., is admissible to show title applies only where the title is directly in issue, and not in an action for a broker's commission

[1]Reported in 155 Pac. 1053.

where it was only necessary to make a *prima facie* case by showing that a party was ready, willing and able to comply with a contract which called for a conveyange of the land by warranty deed.

EXCHANGE OF PROPERTIES—CONTRACT—TIME. Where a contract for the exchange of properties did not provide for its termination, a reasonable time is implied.

SAME — CONTRACT — BREACH — JUSTIFICATION. The fact that one party to an exchange notified the other that they would consider the contract terminated if not performed on a certain date, does not justify nonperformance by the other party, where it appears that negotiations extended beyond that time and ample time was given for performance, and after many objections to the form of the papers, performance was refused, regardless of any date previously fixed therefor.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered May 8, 1915, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Byers & Byers*, for appellants.

*Edgar S. Hadley*, for respondent.

HOLCOMB, J.—Respondent, a real estate broker, as first party, one Thorniley and wife as second parties, and appellants as third parties, on September 23, 1914, entered into a written contract whereby the Thornileys and Bowens agreed to exchange certain properties at certain stipulated valuations, and each of the exchanging parties pay to respondent a certain stipulated commission, the same "being payable upon the execution of the instruments effecting the exchange." The "instruments effecting the exchange" were never executed by both parties to the exchange. The Thornileys claim to have been "ready, able and willing to perform and to have tendered performance to the Bowens, but that performance by them was refused by the Bowens, who also refused performance themselves."

Respondent brought his suit against appellants in two separate causes of action, upon the theory that they breached

the contract and rendered performance impossible by the Thornileys, and that appellants were therefore liable to him, both for the commission earned by him from appellants directly upon the agreed promise to pay, and for the commission earned from the Thornileys under the contract, because of appellants' breach of the contract. The contest is chiefly over the questions of whether in fact the Thornileys were ready, able and willing to perform their contract so as to bind appellants, and whether in fact the Thornileys, rather than appellants, breached the contract. Incidentally, the rulings of the court upon appellants' demurrer to the complaint and upon respondent's demurrer to the affirmative answer of appellants are urged as erroneous.

The tripartite contract, among other things, provided that each of the parties of the second part and of the third part were to furnish to the other an abstract of title covering their respective properties described in the contract, certified to date, allow five days for examination thereof, and to convey, each to the other, the properties so contracted, by good and sufficient warranty deed free and clear of incumbrances of every nature, except certain incumbrances against each which it was agreed the other would assume.

I. Appellants complain of the overruling of their demurrer to the complaint on the ground that two causes of action were improperly joined, one upon contract, and one upon tort; and that the complaint did not state facts sufficient to constitute a cause of action.

"The plaintiff may unite several causes of action in the same complaint, when they all arise out of . . . the same transaction." Rem. & Bal. Code, § 296, subd. 8 (P. C. 81 § 281).

See, also, *Harding v. Ostrander R. & Timber Co.*, 64 Wash. 224, 116 Pac. 635. The first ground of demurrer was not good.

It is further urged that, because the contract stipulated that "such amounts being payable upon the execution of the

instruments effecting the exchange" and the instruments of exchange were not alleged to have been executed, the respondent could not recover, and that therefore the complaint was insufficient.

Respondent could not compel appellants to execute the instruments, but alleged that the other contracting parties, the Thornileys, had been, and then stood, ready, able, and willing to execute their instruments of conveyance, and stood ready to complete the transfer of their properties in accordance with the contract, but that appellants refused such performance and refused to perform their (appellants') contract. In such posture of affairs, under such a contract, the respondent was entitled to recover his agreed compensation, to be paid by both parties, from whichever party refused to perform and rendered performance by the other party to the exchange impossible. The complaint, therefore, was sufficient and the demurrer was properly overruled.

II. Appellants attempted, by affirmative answer and cross-complaint, to claim damages against respondent for the recording of the contract involved herein, alleging that such recording cast a cloud upon their title, to their damage in the sum of $500. Demurrer thereto was sustained, and this is alleged as error. There could be no such recovery. No right, claim, lien, or estate in the real estate of appellants described in the recorded contract became actually or colorably established in respondent thereby. That one of the parties to a written contract voluntarily made by another party to it sees fit for some reason to procure its recordation in the public records violates no legal rights of the other party. There was no fraud, overreaching, or undue influence alleged or existing to avoid the contract. The demurrer to the affirmative answer and cross-complaint was properly sustained.

III. A deed was offered in evidence, executed by Thorniley and wife to appellant, of the real estate to be transferred

by the Thornileys as a tender under the contract. It appears that this deed had no revenue stamps as provided by the emergency revenue act of Congress of October 29, 1914. Objection was made to the introduction thereof for the reason that it was not competent evidence. We cannot find that the revenue act of Congress cited contains any provision that a deed or other such instrument not bearing the revenue stamp is inadmissible as evidence. The act provides only for a penalty for failure to attach such stamps. In any event, the evidence tends to show that the transfer by the Thornileys had been theretofore refused, and it was immaterial whether the Thornileys made any tender of a deed or not under such evidence.

Thorniley, a witness for respondent, while on the witness stand, after reciting a description of the property to be conveyed by him, was asked by counsel for respondent: "Was that your property?" To this appellants objected and the court sustained their objection, saying: "It is incumbent on you, Mr. Hadley, to prove your contention that you were able to convey it. If you had no title, and were not able to convey, you could not recover, so you will have to prove it." The witness was then withdrawn from the stand, and it is contended that there was no other evidence or offer of evidence tending to prove that Thorniley had title to the property in question. It is contended, also, that a witness cannot be permitted to prove ownership by simply stating the fact that he owns property, over the objection of the opposite party.

The first contention does not seem to be sustained by the record. While there were some complications concerning the title of Thorniley, there is evidence to the effect that these matters were all matters of adjustment, and that there had been transactions looking to the adjustment of all the matters which had been objected to by counsel for appellants, whereby it was testified by Thorniley and other witnesses that the title was rendered good. A peculiarity of the contract was

that, while the contract provided that abstracts should be delivered to and examined by each party, there was no provision in the contract that the property conveyed should be of perfect title or good and marketable title. The only provision relating thereto was that each party should give a good and sufficient warranty deed free and clear of incumbrances of every nature except those specified. There is evidence, however, although disputed, to the effect that the title was passed upon favorably by Mr. Byers, acting as attorney for Mr. Bowen, and that the defects pointed out were in the process of adjustment and curing; that, upon the curing of such objections, the title would be satisfactory. There is further evidence that these objections were met and the defects cured. There is further evidence that everything was satisfactory.

As to the other ground of the objection, it is, of course, a general rule that, when the title to real estate is directly in issue, the best evidence of title consists in the muniments of title such as deeds, mortgages, patents, wills, etc.; but when the title to real property is not directly in issue, or where only a *prima facie* showing of title is necessary, the rule as to best evidence does not apply and ownership may be proven by parol. 12 Ency. Evidence, 544. This action was not a suit to try the title of the property, and it was at best only incumbent upon respondent to make a *prima facie* case showing that Thorniley was willing and also able to comply with the contract entered into, and that appellants refused to comply therewith.

IV. What we have said applies also largely to appellants' fifth assignment of error, that the court erred in denying their motion for a nonsuit. As to that, it is argued that one of two things must be true: either the respondent did all the acts necessary to bring the parties together and was, therefore, entitled to a commission from each of them, or he failed to do the acts called for by the contract and was not entitled to a commission from either of them; that, in the

latter case, the motion for a nonsuit should have been sustained as to both causes of action, and in the former case, it should have been sustained as to the second cause of action. Authorities are cited to the effect that the duty of a broker employed to sell property is to bring the buyer and seller to an agreement. While it is not essential that he should be present and an active participator in the agreement or sale when it is actually concluded to entitle him to his commission, he must produce a purchaser ready and willing to enter into a contract on his employer's terms. He is not entitled to a commission for unsuccessful efforts to effect a sale, unless the failure is caused by fault of the principal. And further, that the burden was on the broker, in order to establish a *prima facie* case, to prove not only that the purchaser found was willing, but able to consummate the sale; citing: *Colburn v. Seymour*, 32 Colo. 430, 76 Pac. 1058; *Chaffee v. Widman*, 48 Colo. 34, 108 Pac. 995, 139 Am. St. 220; *Sibbald v. Bethlehem Iron Co.*, 83 N. Y. 378, 38 Am. Rep. 441; *Gilliland v. Jaynes*, 36 Okl. 563, 129 Pac. 8, 46 L. R. A. (N. S.) 129; *Reynolds v. Anderson*, 37 Okl. 368, 132 Pac. 322, 46 L. R. A. (N. S.) 144; *Carter v. Owens*, 58 Fla. 204, 50 South. 641, 25 L. R. A. (N. S.) 736; *Riggs v. Turnbull*, 105 Md. 135, 66 Atl. 13, 8 L. R. A. (N. S.) 824.

There is no doubt these cases in general correctly state the law. But, on the other hand, these purchasers had already agreed upon their sale or exchange. They had entered into a written contract agreeing to make the exchange. The respondent was employed by, and was the agent for, both of them. His compensation had been adjusted. All that was required of him to do he had done. He could not compel either of the parties to make their title perfect or to convey when perfect. It has been held by this court that:

"A real estate broker who has procured a contract of sale to be entered into between the owner of land and a prospective purchaser may maintain an action for damages for the loss of his commissions against the purchaser for failure to

carry out such contract, although the broker had agreed to look to the vendor for his commissions." [Syllabus.] *Livermore v. Crane*, 26 Wash. 529, 67 Pac. 221, 57 L. R. A. 401.

This, then, supports respondent's action against appellants for their failure to carry out their contract, although, as to the commissions of the other party to the contract, he had agreed to look to the other party. The commissions payable by appellants were due under the terms of the contract directly if respondent had done all that was required by him, and without his fault the contract fell through. If the preponderance of evidence was with respondent on those questions, he was entitled to recover. The court so found, and we cannot say that the preponderance is the other way.

V. It is further urged that appellants took the initiative and, on November 10, 1914, fixed a time for the termination of the contract, to wit, November 16, 1914. The contract did not itself provide a time for its termination. In such case a reasonable time was implied. Appellants wrote a letter on November 10, 1914, notifying the Thornileys and respondent that, unless the contract of September 23, 1914, was fulfilled on or before November 16, they would consider it terminated. The evidence shows, however, notwithstanding that fact, that many negotiations were had between the Thornileys and appellants and respondent after November 16. If it had been abandoned, these subsequent transactions were inconsistent. They resumed or continued negotiations with the other parties, thereby leading them into the belief that the contract had not been abandoned and that it would probably be performed. On November 24, there was some negotiation between the parties looking toward the preparation of papers to be deposited in escrow until all the matters should be concluded. On December 12, a conference was had in which a modification of the exchange agreement was considered.

The testimony of Mr. Bowen himself tended very strongly to contradict the abandonment of the contract by their letter

of November 10.   He testified that, two or three days after the expiration of the time specified in his letter, he talked with Mr. Thorniley again about it; that they were then and there arranging for the necessary papers to be placed in escrow, if such was thought advisable by Mr. Fullen (Thorniley's attorney) and Mr. Byers; that he knew then that there had been an arrangement for a loan whereby everything against the Thornileys' property would be cleaned up; that he objected to the form of a mortgage and note that had been prepared for him to sign; that he was advised not to give that mortgage; that he then decided he would not go through with the deal; that he saw Mr. Thorniley and told him he would not give that mortgage, and that they agreed if they could get the money somewhere else, giving a different form of mortgage, he would complete the deal; that Mr. Thorniley informed him about that time of an arrangement with a Mr. Keating whereby Keating would finance the matters against the Thorniley property, and that Thorniley was in position to convey the property with only the $12,000 incumbrance against it, according to the original agreement, but that he then told Thorniley that he considered the trade was all off; that his ground of objection was the form of the mortgage proposed for him and his wife to execute.

This and other evidence tends very strongly to support the finding of the trial court that appellants refused to perform the contract entered into, thereby rendering it impossible for the other parties to the contract to perform it, although ready and able.   Other matters are argued incidentally by the briefs of counsel, but we think this is sufficient to justify the affirmance of the judgment.

Affirmed.

MORRIS, C. J., BAUSMAN, MAIN, and PARKER, JJ., concur.