P. H. REED AND ANOTHER v. F. S. LYCAN.[1]

May 25, 1923.

No. 23,471.

**Real estate brokers not entitled to commission.**

> The evidence does not require findings that plaintiffs, real estate brokers, produced a purchaser ready, willing and able to buy the furnishings and furniture of defendant's hotel and enter a lease for a five or ten year term, but sustains the findings that neither of the two persons sent to defendant was willing to buy and lease on the terms authorized by him.

Action in the district court for Ramsey county to recover $2,430 commission for the sale of hotel property. The case was tried in Beltrami county before Stanton, J., who made findings and dismissed the action on the merits. Plaintiffs' motion for amended findings was denied. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*John R. Donohue*, for appellants.

*Graham M. Torrance*, for respondent.

HOLT, J.

On August 5, 1920, plaintiffs, real estate brokers at Chicago, Illinois, were authorized by defendant to secure, prior to October 1, 1920, a purchaser for the furniture and furnishings of Hotel Markham at Bemidji, this state, at the price of $15,000, and a tenant for the hotel for a five or ten year term at a rental of $1,000 per month, the commission to be 5 per cent of the price of the personal

[1]Reported in 193 'N. W. 728.

property and 9 per cent of the first year's rental if for a five year term, and 14 per cent of such rental if for a ten year term. The employment is admitted. Plaintiffs claimed they secured two customers, namely, Alexander MacSwan and F. G. Sangster, each ready, able and willing to make the deal. The defendant denies this. The court made findings in favor of defendant, and plaintiffs appeal from the order denying a new trial.

The parts of the findings assailed are to the effect that Alexander MacSwan was never ready and willing to purchase the property or enter a lease, and the like finding in respect to F. G. Sangster. Also that plaintiffs never at any time afforded defendant a full or fair opportunity to make a binding contract with F. G. Sangster or any other proposed purchaser and lessee of the property and that defendant has never refused to sell or to lease to either Sangster or MacSwan.

If no letters had passed between the parties in respect to MacSwan and Sangster, there would have been no room whatever for a claim that the findings referred to were insufficiently supported. Defendant's oral testimony was positive that MacSwan never expressed a desire to buy or lease, and that Sangster absolutely refused to consider the proposition. And the correspondence introduced does not so overcome this testimony that the trial court was not justified in making the findings mentioned. As to MacSwan there is nothing written showing his willingness to deal; of course, the statement, in his deposition, that he was, made long after the employment ended, serves no purpose. He came to Bemidji on August 9 or 10, examined the property, and left for his home at Waterloo, Iowa. Defendant testified that when MacSwan left he declared that he could not decide until he had consulted his wife, then at his home, and that defendant never heard from MacSwan afterwards. MacSwan testified that he was willing to buy the furnishings and lease as proposed, and that defendant was to send a draft of the papers to him at Waterloo, but instead wrote that he would not deal, and that MacSwan informed plaintiffs of this refusal. The letter is not produced and plaintiff denies that he so wrote.

Sangster was sent from Chicago to Bemidji by plaintiffs about ten days after MacSwan had been there. He examined the property. Defendant testified that Sangster stated the property had been misrepresented; that he would not buy the furnishings or rent; that he would expect some one to reimburse him for the expenses of the trip, and that there was some talk in which defendant offered to sell the hotel, but that Sangster would not then entertain the proposition. Sangster testified he was willing to buy the furnishings and enter a lease, but that defendant would not sell or lease, and that Sangster so wrote plaintiffs the same night he returned to Chicago. This letter was received over defendant's objection. This was error; but, considering it as properly in, we think, nevertheless, the learned trial court cannot be held to have disregarded the evidence when finding that plaintiffs had not in Sangster secured a purchaser and tenant so as to be entitled to the promised commission.

On August 23 plaintiffs wrote defendant: "Mr. F. G. Sangster called at our office this morning and stated he was interested in your hotel and would be willing to purchase same at the price you stated to us in your correspondence with us and would be willing to make a deal at any time. We have known Mr. Sangster for some time, and we recommend him as a very high class hotel man and financially he is well able to finance your hotel in every particular, and we wish that you would kindly advise us if we shall not make a deal with him at this time." Defendant was then absent in Toledo, Ohio, called there by the serious illness of his mother. Plaintiffs were so advised by a telegram from the son, and on August 25, they wrote him at Toledo saying: "We wrote you on August 23rd, Mr. F. G. Sangster had called at our office and was interested in purchasing your hotel at the price and conditions stated to us in your correspondence * * *." On September 7, plaintiffs wrote: "We are at a loss to understand why you have failed to answer our letters of August 23rd and 25th. Mr. F. G. Sangster has been and is still ready and willing to purchase your hotel on the price and terms which you listed same with us and would kindly ask you to advise us by return mail if it is satisfactory for us to come to Bemidji with Mr. Sangster and close the deal up. Kindly wire us upon receipt of

this letter at our expense." On September 13, defendant wrote plaintiffs that he had been in Ohio, on account of his mother's illness and further states: "I made Mr. Sangster a price on the hotel property of $125,000 for the real estate, $15,000 for the furniture and all stores, unexpired insurance, etc. at cost. Terms were $50,000 cash down on transfer of real estate, balance of deal to be cash at time of purchase, these prices must be net to me,, that is, you are to get your commission over and above these prices." Replying, September 14, plaintiffs called attention to the fact that on July 26 defendant had advised plaintiffs that he was willing to sell the furniture for $15,000, and make a lease for five years at the monthly rental of $1,000, and that they got busy; that to the two customers plaintiffs found, defendant tried to sell the real estate in which they were not interested. The letter ends with a demand for commission and a request that defendant wire plaintiffs authority to close the deal or else mail a check for the commission. Defendant's son answered that his father was out of the city for a few days. Defendant sent no telegram and no check.

The record also discloses that, previous to the employment to find a purchaser for the furnishings and a tenant for the hotel, the hotel had been listed with plaintiffs for sale. If defendant's testimony was true that Sangster absolutely declined to take a lease, and that defendant had then proposed to sell the hotel property, it is readily apparent that all the correspondence previous to the letter of September 14 may have been understood by defendant as relating to the purchase of the hotel, an entirely different proposition from leasing the hotel and selling the furnishings. Again defendant knew what took place between himself and MacSwan and himself and Sangster, and, if he testifies truly as to that, he knew that plaintiffs' assertion in that letter that these men had offered to lease and to buy the furnishings was absolutely false. His omission to wire authority under those circumstances may not have appealed to the trial judge as strange. There is also something that might arouse suspicion in the mind of a trier of fact in that, notwithstanding plaintiffs had been advised, as they say, by MacSwan, that defendant had flatly refused to lease, they, nevertheless, send Sangster

to Bemidji for the same purpose.   Again, the letter Sangster wrote plaintiffs on the eve of his departure from Bemdiji to Chicago, erroneously admitted, serves to throw doubt upon plaintiffs' claim instead of sustaining it.   The letter must have reached Chicago and plaintiffs before or at the same time Sangster did.   Still the letter of August 23 from plaintiffs to defendant does not at all comport with what one would expect from a writer having knowledge of the facts stated either in Sangster's letter or what he must have told plaintiffs if he told what he wrote or testified to.

There is no doubt concerning the applicable law.   Plaintiffs were not required to bring the purchaser face to face with defendant. McDonald v. Smith, 99 Minn. 42, 108 N. W. 291.   And if, when they notified defendant that they had secured a purchaser, defendant declined to go on with the deal, the commission would have been earned.   But here the court found, and could find, that the purchaser so tendered had a few days previously in person refused to purchase and lease, and that the testimony of the proposed customer and plaintiffs was false.   It is true enough that the employment did not require or even authorize plaintiffs to accept earnest money or execute a bill of sale or a lease.   But plaintiffs had not earned a commission until they had fairly produced to defendant a customer who was ready, willing and able to buy and lease on the terms stated so that he could enter binding agreements with him, or else that defendant, when notified of the procurement of such a customer, without legal cause refused to go on with deal.   Here the court evidently considered the so-called tender of Sangster not to have been in good faith.   The correspondence also leaves the proposition so uncertain whether Sangster was to buy the hotel or merely to buy the furnishings thereof and become a tenant, that the attack on the findings must fail.   No deal was consummated, and there was no unequivocal and fair offer by Sangster to pay $15,000 for the furnishings and enter a lease, or to bind himself in writing so to do.

Much is made of the fact that the learned trial court in the memorandum approved of the rule adopted in Gilliland v. Jaynes, 36 Okl. 563, to the effect that an agent employed to find a purchaser in order to be entitled to recover his commission must prove a consum-

mated purchase, or at least tender to his principal, the seller, a binding contract signed by the purchaser to buy the property upon the terms authorized. This seems to go farther than McDonald v. Smith, supra. The findings hereinbefore referred to exclude plaintiffs from the right to recover commissions under the rule stated in the McDonald case and without taking into consideration the finding which would exclude recovery under the Gilliland case.

The order is affirmed.