[No. 8085.]

## SCANLAN V. LACOSTE.

1. EVIDENCE—*Competency.* Replevin for plaintiff's wearing apparel, alleged to have been wrongfully and maliciously taken from her. A re-delivery bond, given by defendant, was held not admissible to show malice on his part in the taking.

In giving the bond defendant was in the exercise of a lawful right, and his motive is not a subject of challenge. (452.)

2. APARTMENT HOUSE—*Keeper No Lien on the Tenant's Goods.* The keeper of an apartment house, letting furnished rooms to those who occupy them as a home and residence, keeping house as if living in their own premises, is not entitled to a lien upon the goods of the tenant under Rev. Stat., sec. 4013. (452-454.)

*Error to Denver District Court.* HON. JAMES H. TELLER, Judge.

Mr. T. WEBSTER HOYT, Mr. L. M. GODDARD, for plaintiff in error.

Messrs. BARNETT & CAMPBELL, Mr. JOHN E. FETZER, for defendant in error.

HILL, J., delivered the opinion of the court.

This action in replevin was brought by the defendant in error to secure possession of her wearing apparel, trunks, etc., of the alleged value of $1,752.15, claimed to have been wrongfully, wantonly and maliciously taken from her, and thus detained by the defendant (the plaintiff in error here). She also claimed $1,000 damages account of their alleged wrongful taking and detention. The plaintiff in error, hereafter referred to as the defendant, admits the taking and detention of the goods, but claims a lawful right to do so, under the provisions of section 4013, R. S. 1908, concerning liens in certain cases. Trial was by jury, which returned a verdict for the plaintiff and fixed her damages at $500, and found the value of the property to be $1,250. The defendant brings the case here for review.

It appears that after the property was taken by the sheriff under the writ of replevin, the defendant, within the time provided by the Code, gave the usual re-delivery bond and had the property returned to him. The plaintiff offered this bond in evidence. When objection was made her counsel stated, in substance, that the purpose of it was to show the animus of the defendant in taking and holding these goods for a claim of $241; that the goods had been replevined and a bond given in the sum of $500; that the defendant was then amply secured, and should have released the property; for this reason it was an element tending to show the animus of the defendant in taking and detaining the goods; that his doing this (to-wit, giving the re-delivery bond), and the fact that he did it when he was secured by the replevin bond, was evidence tending to show that he had a wanton

motive in taking and detaining the goods, if it is later shown that he had no lien. In overruling the objection, the court said, "There is no dispute that he did not have the legal right to do it. General Barnett's proposition is that while he might retain the goods, if he does retain them under such circumstances he shows a wrong motive; that is his theory of the case. * * * That, I think, is a matter entirely for the jury. The theory of General Barnett is that this indicates malice. I think he is entitled to go to the jury and argue that question, under those particular circumstances. I think the objection should be overruled." In this the court erred, and when the ruling is considered in connection with this conversation, and the instruction concerning exemplary damages, it was highly prejudicial to the rights of the defendant; it gave her counsel the right to argue, and by these statements of court and counsel the jury were led to believe, that they could find that the giving of this bond was evidence of malice upon behalf of the defendant, and assess damages accordingly, although he was in the performance of a lawful act. When this case was instituted the defendant was in possession of this property. The Code provides a method whereby it could be taken from him, but it also provides that when this method is followed he may, within a certain time, have the property returned to him by giving a re-delivery bond. It does not say that he may do this, conditional that he is lawfully entitled to the possession of the property. The necessity for the replevin act is that the right to possession is usually, if not always, in dispute, but the Code is unconditional, and applies to all cases where property is taken under this writ. It follows that he was but in the exercise of a lawful right, which neither the court, its officers, or the plaintiff, have the right to attempt to prevent. *Parlin v. Austin*, 3 Colo. 337; *Wyatt v. Freeman*, 4 Colo. 14.

For these reasons his motive in giving the bond is im-

material, and the amount of damages cannot be increased for any reason which actuated its execution. *Denver & Rio Grande R. R. Co. v. Mills* (decided April 5, 1915), *ante* 98, 147 Pac. 685; *Guardian Trust Co. v. White Cliffs Portland C. & C. Co.* (C. C.), 109 Fed. 523; *McMullen v. Ritchie* (C. C.), 64 Fed. 253.

The defendant contends that the court erred in holding that the provisions of section 4013, R. S. 1908, did not give him the right to hold these goods for the payment of certain rent. In view of a new trial it is proper to pass upon this question. That portion of this section necessary to consider reads.

"The keeper of any hotel, tavern, or boarding house, or any person who rents furnished or unfurnished rooms, shall have a lien upon the baggage and furniture of his or her patrons, boarders, guests or tenants, for such boarding, lodging or rent."

The record discloses, that the defendant owned what is commonly known as an apartment house, consisting of two, three and four-room suites; that he rents them furnished for housekeeping purposes for homes; that he has an office in the building; that he also keeps transients over night, and has single rooms for that purpose; that the plaintiff or her father (a question which is in dispute) rented suite No. 57 in this building, known as a four-room apartment, consisting of a kitchen, dining room, bedroom, and living room, with closet and bath; that they were furnished for housekeeping purposes; that the rent was to be $32 per month; that the plaintiff with her father and mother occupied it, as their home, for about thirteen months, when they attempted to move out without paying $241 back rent then due; that the plaintiff had secured an expressman, and had her goods packed and, in the hall, when the defendant declined to allow her to take her goods without paying the

rent, and took possession claiming a lien thereon by virtue of the aforesaid statute.

In *Morse v. Morrison*, 16 Colo. App. 449, 66 Pac. 169, it was held that this section does not apply to an unfurnished room in an office building rented for office purposes. The reasons given are not only correct, but convincing, that the words "any person who rents furnished and unfurnished rooms" as used in this section were not intended to include all classes of rooms, for whatever purpose they may be rented, but are limited to persons renting rooms for lodging purposes, etc., that is for the same kind of rooms that the keeper of a hotel, tavern or boarding house are given a lien for. This construction, likewise, eliminates furnished houses from the provisions of this section. The question, then, to determine, is on which side of the line was the plaintiff and her parents; if they were furnished rooms within the meaning of this section, then the statute applies.

In *White v. Collins Bldg. & Const. Co.*, 82 App. Div. 1, 4, 81 N. Y. Sup. 434, 436, the question arose over what an apartment house is, the court said:

"An apartment house is a building used as a dwelling house for several families, each family living separate and apart from the others; that the building is commodious, and is very handsome in outward and inward appearance, and fitted with every modern appliance for the comfort of tenants; that each separate family uses the main hall for an entrance to the building; each suite of rooms is a dwelling house, with a separate hall, water-closet, bath, and in itself complete in every detail."

While this definition, when applied to a great many of such buildings, may be too elaborate, concerning size, appearance, and appliances, at least outside of New York City where this case arose, we think its conclusion correct and that to all intents and purposes an apartment in such build-

ings consisting of a suite of rooms, separate from the remainder of the building, with conveniences for housekeeping, and intended for that purpose, which is but one of the methods adopted to meet the apparent needs of modern times, and when occupied as a home, is to all intents and purposes the same as an individual dwelling house. As said in *Wolcott v. Ashenfelter,* 5 N. M. 442, at page 450, 23 Pac. 780, 782, (8 L. R. A. 691).

"In case of a building, erected with many rooms, for the purpose of letting separate apartments to different tenants, no occupant is a tenant of the whole building, but only of a particular apartment, which apartment is the tenant's house. Over that he has full control. One entering there without his consent is a trespasser. It is his house."

Other cases sustaining these views are: *Shearman v. Iroquois Hotel & Apartment Co.,* 42 Misc. 217, 85 N. Y. Sup. 365; *McDowell v. Hyman,* 117 Calif. 67, 48 Pac. 984; *Swain v. Mizner,* 74 Mass. 182, 69 Am. Dec. 244.

The court was correct in holding that the statute did not give the defendant a lien upon the property for the rent in question.

Complaint is made to the rejection of certain testimony and the admission of other testimony pertaining to the damages, also to certain instructions concerning the measure of damages account of not being covered by the pleadings, and for other reasons. We deem it unnecessary to go into these matters. The parties will be permitted to amend their pleadings, if they desire. The other alleged errors, if they are such and are prejudicial, may not occur again. The judgment is reversed and the cause remanded for a new trial.

*Reversed.*

GABBERT, C. J. and SCOTT, J., concur.

Decided June 7, A. D. 1915. Rehearing denied July 6, A. D. 1915.