## CONNELL v. OREGON SHORT LINE R. CO. et al.

No. 2056.    Decided August 25, 1917.    Rehearing denied November 9, 1917.    (168 Pac. 337.)

1. WITNESSES—CROSS-EXAMINATION—CONTRADICTORY DECLARATIONS. In a passenger's action for injuries against a railroad and the Pullman Company, the court erred in sustaining defendants' objections to questions propounded to their witness by plaintiff on cross-examination as to his previous statements made to plaintiff as to the condition of the doorsill of the car where the accident happened, at or about its time, the witness having testified as to the condition of the car platform, that he had seen the snow swept away, that he did not see any snow or ice there, and that had there been any he would have seen it, plaintiff's questioning seeking to elicit information as to whether or not the witness had not made statements to plaintiff that there was ice on the sill, etc.    (Page 34.)

2. APPEAL AND ERROR—HARMLESS ERROR—SUSTAINING OBJECTION TO CROSS-EXAMINATION. In view of all the testimony for plaintiff, and the jury's special findings that plaintiff might have slipped on

account of the snow on her shoe, etc., the error was harmless. Page 34.)

3. APPEAL AND ERROR—ASSIGNMENT OF ERROR—WAIVER. Appellant waives an assignment of error by not contending against the court's ruling in brief and argument. (Page 35.)

4. TRIAL—INSTRUCTIONS—INCONSISTENCY. In an action for injuries against a railroad and the Pullman Company, instructions *held* so inconsistent with a preceding instruction that the instructions as a whole could not stand together. (Page 36.)

5. CARRIERS—CARRIAGE OF PASSENGERS—INJURIES—RES IPSA LOQUITUR. Where plaintiff was injured by slipping on the sill of a Pullman car of the latest and most approved type of construction, in perfect repair, the film of ice, if any, on the sill, which caused the fall, being so imperceptible that it could not be observed without getting down on the floor and scraping the sill with a knife, the doctrine of res ipsa loquitur did not apply.[1] (Page 37.)

6. CARRIERS—CARRIAGE OF PASSENGERS—DUTY OF ROAD AND PULLMAN COMPANY. A railroad and the Pullman Company were required to exercise only reasonable care for the safety of a passenger in acquiring a knowledge of the presence of ice on the sill of a car, and if the coat of ice could not be seen by an ordinarily reasonable inspection, they were not liable to a passenger who slipped and fell. (Page 37.)

7. APPEAL AND ERROR—HARMLESS ERROR—INCONSISTENT INSTRUCTIONS. Plaintiff, appellant, may not complain of the court's instructions, which, though irreconcilable and inconsistent, were prejudicial only to defendants. (Page 37.)

8. APPEAL AND ERROR—REVIEW—VERDICT ON CONFLICTING EVIDENCE. The verdict of a jury on conflicting testimony is conclusive on the Supreme Court as to the facts. (Page 38.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie*, Judge.

Action by Margaret B. Connell against the Oregon Short Line Railroad Company and the Pullman Company.

Judgment for defendants. Plaintiff appeals.

[1] *Paul* v. *Salt Lake City Ry. Co.*, 30 Utah 41, 83 Pac. 563; *Dearden* v. *San Pedro, L. A. & S. L. R. R. Co.*, 33 Utah 147, 93 Pac. 271.

AFFIRMED.

*Aaron Myers* and *Dey, Hoppaugh & Fabian* for appellant.

*George H. Smith* and *Baldwin Robertson* for the railroad company.

*W. H. Leary* and *Jas. M. Lanigan* for the Pullman company.

CORFMAN, J.

Plaintiff commenced this action in the district court of Salt Lake County to recover damages for injuries sustained by her while being carried as a passenger in a car of the defendant Pullman Company in use by the defendant Oregon Short Line Railroad Company.

Briefly stated, the complaint alleges: That on the 19th day of December, 1914, plaintiff purchased a ticket of the defendant railroad company entitling her to transportation from Boise, Idaho, to Salt Lake City, over its line of railroad, and at the same time purchased a ticket of the defendant Pullman Company entitling her to transportation in the sleeping car "Reynosa" owned and operated by said Pullman Company over the railroad company's line between the points above mentioned; that while plaintiff was en route the train stopped shortly before noon on the 20th day of December, 1914, at the city of Pocatello, and plaintiff alighted from said train for the purpose of posting a letter, and upon returning to the train and entering the sleeping car, her foot slipped upon the sill or threshold of the door entering the car which was in a dangerous and unsafe condition owing to the negligence and carelessness of the defendants in not covering it with a mat or other covering for the protection of persons passing over it, and was, by reason of the joint and concurrent negligence of the defendants, coated and covered with ice; that by reason of said condition plaintiff slipped and fell to the floor of the car, breaking the bones of her left leg, in consequence of which she suffered and sustained damages in the sum of $15,000, for which she prayed judgment.

The defendants separately answered admitting their engagement with the plaintiff to carry her as a passenger for hire as alleged in the complaint; that at the time and place

mentioned plaintiff met with an accident after alighting from the train and returning to the car in question by falling to the floor of the car and breaking her leg, and that she sustained injury thereby; denied all negligence on their part, and also other allegations of the complaint not admitted by their answer, and affirmatively alleged contributory negligence on the part of the plaintiff.

At the trial plaintiff, in her own behalf, testified concerning the circumstances and conditions attending the accident as follows:

"As we came through Idaho that day the weather seemed stormy, and I judge that the temperature outside was near zero. * * * When I went out to breakfast in the morning I noticed, in passing from my car to the diner, some snow on the vestibule of my car which had drifted evidently through a leaky side curtain, a curtain between the two cars. * * * The snow was blowing strong. * * * When we reached Pocatello I went out to mail letters. * * * The car was near the mail box. After mailing the letters I returned to the car. It was quite cold outdoors, eighteen or nineteen degrees above zero, I should say, but not storming hard, snowing just a little. I went back to the same door of the car out of which I came. * * * When I got to the platform I went to the door and put my hand on the door jamb and heard some one coming out of the hallway, or vestibule, and stepped back, and they came out and went down from the car to the platform of the depot. Then I stepped forward, first with the right foot and then with the left, and my left foot slipped and seemed to catch or stop on the linoleum, and I pitched forward and twisted clear around, until the end of my left foot was twisted clear around to the front. I stepped with my left foot upon the brass doorsill of the car, and as I placed the left foot upon the sill it slipped and I fell forward. I had all of my weight on the left foot. In coming onto the car platform I had noticed snow on the platform, practically the same as it was when I went to breakfast in the morning. There was snow on the car platform below and around the doorsill, but the center of the platform was clear. I didn't step in that snow,

but stepped over it. I fell forward into the car, slightly to the right, grabbing at the doorknob. I twisted about as I fell and was almost in a sitting position when I got myself around. My feet were a little across the door of the car, my right foot further out than my left. My left foot had turned around until the heel was on the top. I got hold of it and wrenched it several times to get it around, and after doing that I looked to see what had made me fall, and put my had out to the brass doorsill. I was sitting on the floor inside of the car, and in putting out my hand rubbed my fingers over the doorsill and found flakes of snow on it. The ice on the doorsill proper, on the top part of it at that time was not ice that you could see. You had to feel it in order to find it. But outside of the door toward the platform there was a little more; you could see the ice with the naked eye. The metal sheet I spoke of was quite sloping and the ice on it was quite visible. The scale of ice on top of the doorsill was especially toward the outside. I don't know what you call it, moisture. The outer edge of the sill toward the outside of the car was where the ice was. I couldn't see it by looking at it even when I was sitting. I mean in looking down on the doorsill I couldn't see it. From my examination of the ice there on the doorsill by standing up and looking down as I went into the car I could not have seen it. I didn't see it after I fell, even close. I had to examine to find out what the trouble was."

On cross-examination plaintiff testified:

"I first saw the ice after I fell, but did not look before I fell to see whether there was ice there. I think I would have to have a microscope to have found it. I could not see it standing up. As I went into the door I didn't see any ice on top of the doorsill. As I made the step I saw a little bit of ice on the corrugated part. I had seen the snow on the platform when I went in and back from breakfast, and stepped over it when I went out to mail my letter. I saw nothing there that would apprise me of danger and make me feel that the doorsill was slippery. I was wearing rubber heeled shoes but it was the leather part that slipped, not the heel. I have ordinarily good eyesight and am rather cautious by nature.

I looked at the sill a little bit more than ordinary when coming inside, and I discovered or thought that it was absolutely clear. I didn't discover it until I had got the ice off. Any one seeing the ice there must have got down to it and dug it up. I think that I would sense the danger quicker than a scatter-brained girl of sixteen, and might average pretty well in having as good judgment as a reasonable person such as the law contemplates. I used all reasonable faculties I had to avoid danger. It would be impossible for a reasonable person to suspect there was ice on the doorsill; there was not a particle—it was as clear as if there was ice—the brass right there, it looked as though it was a portion of the brass. I was very much surprised when I fell, and I leaned over and rubbed my fingers over the sill and found ice on my fingers. I rubbed there two or three times to feel—sort of feel—the ice. I am not positive that I got it on my fingers the first time, but I know there was ice there when I felt of it.''

J. G. Anderson, a witness in behalf of the plaintiff, testified:

''Immediately after the accident I examined the threshold to determine its condition. I took my knife and my knife handle and scraped the top part of the doorsill to ascertain if there was any ice, and the cause of it being slippery. The door was shut when I examined the sill, there being about an inch and three-eighths of it extending from the edge of the closed door to the outer vestibule on which I found ice. The thin ice scale extended the full length of the doorsill on the outer side. I couldn't observe the ice on the top of the sill in a standing position. If I could, I would not have had to get down to examine it. I used the end of my closed knife with which to scrape and by doing so noticed some thin scale of ice. The ice was transparent, and you couldn't notice it in a standing position. It looked to be a piece of brass. That was the appearance of the sill. I made the examination of the sill before entering the car. This was the first time I saw any ice on the doorsill, although I might have been over it more than once. There was no ice inside the door to my knowledge.''

J. D. Hayes, a pullman conductor, gave testimony as follows:

"I noticed some snow on the platform of the car Reynosa, and I called the porter's attention to it, telling him that he had better sweep it off, which was done. *   *   * About an hour later there was a little snow which had accumulated there, and the porter was busy, and I took the broom and swept it up, myself. *   *   * When we got into Pocatello there was a slight amount of snow in the vestibule. *   *   * There was nothing on the doorsills that I could see at Pocatello."

Frank S. Pounders, also a Pullman conductor, testified:

"I went to take charge of the car Reynosa at Pocatello on December 20, 1914. *   *   * I first noticed Miss Connell who came up and spoke to the porter about some mail, and he told her to wait until we switched to the other track and she went back into the car. Then we went down to the men's end of the car and the porter swept off the platform while the car was being switched from train No. 18 to No. 14. I was standing in the doorway while he was cleaning the platform, and I did not notice any ice on the doorsill at that time, nor afterwards when the car had been switched. There was not much snow on the platform, and he swept it all off. I didn't see anything unusual about the platform in the way of snow and ice after he had cleaned it, and I would have seen ice if there had been any on the sill. *   *   * I saw the plaintiff come down the steps there and go back up again. I saw her fall, and started directly for her as soon as she fell. When I got to her she was sitting on the floor of the car with her ankle in her hand. I didn't notice her scrape up ice or attempt to from the doorsill. I would have seen her if she had. *   *   * I noticed no ice on the doorsill where she fell at any time, and, as far as I observed, the doorsill was in a safe condition."

Edwin E. Hawley a passenger conductor for the defendant, testified:

"I took charge of train No. 14 from Pocatello to Salt Lake City. *   *   * It is the duty of a passenger train conductor to make full report of any accidents on any train he is running. *   *   * I was told that a lady had fallen and broken her leg in a sleeper, and I ran back to the sleeper Reynosa.

\* \* \*    As soon as I got there I examined the steps, plat-
form, door, etc., to see what had caused the accident.   The
platform inside the car was damp—tracks where people had
been walking in and out.   The metal doorsill looked normal to
me.   I didn't detect anything wrong with it.   There was a very
slight snow on the ground at Pocatello; the passengers had
tracked it down, kind of wet.   \* \* \*   The threshold or sill
of the car was damp like the platform.   I couldn't see any
ice on it.   I looked at everything there that would cause any-
body to fall.   \* \* \*   The only thing unusual there were
the wet tracks where people had been walking in and out of
the door, and there would be nothing unusual about that in
snowy weather."

Trial was to a jury.   Certain special questions were sub-
mitted to the jury and answers returned as follows:

"(1) Question:   Do you find that some snow, ice, or moist-
ure may have adhered to the plaintiff's shoe, and that such
snow, ice, or moisture may have made the bottom of her shoe
slippery, thereby causing her to slip when she stepped upon
the threshold?   Answer: Yes.

"(2) Question:   Do you find that the threshold of the car
in question on which plaintiff slipped and fell was apparently
dangerous on account of the presence of any ice?   Answer:
No.

"(3) Question:   If your answer to interrogatory No. 2 is
'No,' then do you find that the presence of ice on such thresh-
old could have been discovered by the exercise of such care,
prudence, and foresight as a careful and prudent person
would exercise in determining whether or not such threshold
was a safe place on which to step?   Answer: No."

A verdict for the defendants was returned by the jury "No
cause of action," and judgment thereon entered accordingly.
Motion for new trial was made and denied.   Plaintiff appeals.

Plaintiff assigns as error the court's ruling sustaining de-
fendants' objections to questions propounded defendants'
witness on cross-examination for the purpose of impeachment,
ordering and permitting the jury to view the car on which
the accident occurred, and the giving of certain instructions

Connell v. Oregon Short Line R. Co. et al., 51 Utah 26.

to the jury. The record is not entirely clear as to what prompted the court in refusing the plaintiff permission to interrogate the defendants' witness Pounders, on cross-examination concerning his previous statements made to the plaintiff as to the condition of the doorsill at or about the time of the accident. Defendant's counsel insist that the court's ruling at the time was influenced by reason of the plaintiff seeking to introduce the evidence as part of the res gestæ. While the official report of the court stenographer at that stage of the proceedings seems to have supported the contention, yet the court, later on, supplied the record in accordance with the plaintiff's contention that the questions propounded to the witness were for the sole purpose of laying a ground for impeachment of said witness; and so the record now appears as presented to this court for its consideration.

We think it was clearly error on the part of the court in refusing to permit the witness to answer the questions propounded by plaintiff's counsel. The witness had testified as to the condition of the car platform, as he viewed it, at or about the time of the accident; that he had seen the snow swept from the platform by the porter, and that he did not see any snow or ice there, and that had there been ice on the sill he would have seen it. Plaintiff's questioning of the witness, objected to by defendants, sought to elicit the information as to whether or not he had not made statements to the plaintiff, at or about the time of the accident and subsequently, that there was ice on the sill over which plaintiff fell, that it was bad and in a dangerous condition, and that he had fallen there himself. Plaintiff's attorneys further announced their purpose, if the witness by his answer denied having made the statements, of placing the plaintiff on the witness stand, and that said plaintiff would testify that he had made the statements to her. We cannot conceive a more flagrant violation of the rule permitting questions for the purpose of impeachment of a witness than the court's refusal to permit plaintiff's questions to be answered. However, we do not think the error complained of here is sufficient to move this court to reverse the judgment upon that ground alone. In

view of all the testimony adduced in behalf of the plaintiff, much of which we have quoted herein, and the special findings of the jury, also set forth, we are convinced this error was not prejudicial nor of such a character as to have in any measure affected the findings and verdict of the jury.

Passing plaintiff's second assignment of error, that the trial court erred in ordering and permitting a view, by the jury, of the car on which the accident occurred, for the reason that plaintiff has apparently waived any question as to that assignment by not contending against the court's ruling in her brief and argument, we next find the instructions given to the jury assailed.                    **3**

The court first instructed the jury as to the duty of the defendant as a carrier of passengers for hire, as follows:

"(12) A railroad company engaged in the carriage of passengers is bound to the exercise of the highest degree of care, prudence, and foresight consistent with the practical operations of its road, of the utmost skill, diligence and care consistent with the business in view, the instrumentalities employed, and the dangers naturally to be apprehended."

The court then proceeded to instruct the jury as complained of by plaintiff as follows:

"(16) You are instructed that no presumption of negligence arises from the fact alone that there was a thin layer of ice on the threshold or sill of defendant's car, but it is incumbent upon the plaintiff to prove by a preponderance of the evidence that the defendant knew, or in the exercise of reasonable care could have known, of its presence there.

"(17) You are instructed that before the plaintiff can recover in this action, it is incumbent upon her to show that there was ice on the threshold or sill of the car in question which was apparently dangerous, and that it must have remained there an unreasonable length of time, and that defendant's employees must have had a reasonable opportunity to remove the accumulation, if there was any, before the time of the accident.

"(18) You are instructed that if you find from the evidence that there was a thin coat of ice on the doorsill, and

that the coat of ice was transparent and could not be seen by an ordinarily reasonable inspection, and that the defendants had no actual knowledge of the presence of the ice, and in the exercise of reasonable care could not have acquired such knowledge, then you will find the issues in favor of the defendants.

"(19) You are instructed that the defendant companies are not insurers of the life and safety of their passengers, and that in order to render them liable it is necessary for the plaintiff to show that the defendants neglected the performance of some duty which in the exercise of reasonable care, prudence, and diligence, they owed to the passengers on their cars."

"(23) You are instructed that the defendants were required to exercise only such care in maintaining the entrance and thresholds of its cars in a condition free from ice as ordinarily prudent persons would use. Such care varies according to the peculiar facts and conditions of each instance."

Plaintiff contends that the last above quotations are so clearly inconsistent with instruction No. 12, as given by the court, that the instructions as a whole may not stand together without being held erroneous. We agree with this contention. However, we do not agree with the contention     4
that, under the facts and circumstances surrounding the case at bar, the court should have adhered to the maxim, res ipsa loquitur, as applied by this court in the cases of *Paul v. Salt Lake City Ry. Co.*, 30 Utah, 41, 83 Pac. 563, and *Dearden v. San Pedro, L. A. & S. L. R. R. Co.*, 33 Utah, 147, 93 Pac. 271. We need not here discuss the issues involved in those cases. Suffice to say they present very different statements of fact from the case at bar. Those cases presented the question of insufficient and defective appliances used in the operation of railroad cars, the use of which gave rise to the presumption of negligence without the necessity of establishing it. In the case at bar it is admitted that the car on which the plaintiff sustained her injuries was of the best and most approved type of construction, in perfect repair; that no breakages had occurred; that it was being properly operated;

that primarily, and the only reason to be assigned for the accident to plaintiff was the fact that during the inclement weather then prevailing ice had formed upon the doorsill of the vestibule; that plaintiff was caused to fall upon the ice by reason of those in charge of the car having failed to remove the ice under conditions that were wholly imperceptible to the eye of a person when in a standing position, and ascertainable only by a person upon getting down on the floor and scraping the sill with a knife; or, to use the expression of the plaintiff, when "it was impossible to suspect the ice was there," or without getting down on the floor and making a minute examination, as did the witness Anderson.

Under the facts and circumstances attending the accident in question, as shown by the record here, the res ipsa loquitur doctrine, in our opinion, does not apply, and it was error for the court to instruct the jury that the defendants were "bound to the exercise of the highest degree of care, prudence, and foresight," or to otherwise instruct than to the effect that the defendants were required to exercise any greater degree than "reasonable care" in acquiring a knowledge of the presence of ice on the doorsill of the car, and if the coat of ice could not be seen by an "ordinarily reasonable inspection," then they were to find the issues for the defendants.

The plaintiff, therefore, may not complain of the court's instructions, as given, being irreconcilable and inconsistent, for, as to her, they were not prejudicial, but were, if to be considered, prejudicial against the rights of the defendants to a fair and proper trial.

Let us assume, for the sake of argument alone, that instruction No. 12 was a proper one, as given by the court, to the effect that the defendants, under the facts and circumstances surrounding plaintiff's accident were bound to exercise the utmost skill, diligence, and care, even then are we not confronted with a sharp conflict in the testimony? The plaintiff's witnesses testified that there was ice on the doorsill of the vestibule; that they observed it and gathered it from there, while the defendant's witnesses testified that they, on

making a careful examination, did not observe any ice on the sill; that had there been any ice there they would have seen it, and, further, that they were present when the accident occurred, and that the plaintiff did not remove particles of ice ,from the sill after the accident, as testified to by her.

In view then of the conflicting testimony disclosed by the record, and the special findings and verdict of the jury, particularly the finding that the accident may have been caused by snow or moisture adhering to plaintiff's shoe,          8 thereby causing her to fall when she slipped upon the threshold of the defendant's car, this court may not disturb the verdict of the jury in passing upon and determining the facts.

There being no prejudicial error, as we have shown, disclosed by the record, and the jury having passed upon the facts, it is ordered that the judgment of the district court be affirmed, with costs.

FRICK, C. J., and McCARTY, THURMAN, and GIDEON, JJ., concur.