FUDGE v. DOWNING et al.

No. 5188.　Decided November 23, 1933.　(27 P. [2d] 33.)

102

*Harley W. Gustin,* of Salt Lake City, for appellant.

*Willard Hanson* and *L. B. Wight,* both of Salt Lake City, for respondent.

ELIAS HANSEN, Justice.

Plaintiff brought this action to recover from the defendants the following relief: (1) Damages because of the alleged unlawful acts of the defendants in taking and retaining possession of an apartment located in the Downing Apartments at 130 South Third East street, Salt Lake City and county, Utah; (2) for the return of certain enumerated personal property alleged by plaintiff to have been unlawfully taken and retained by the defendants, and, if the return of the personal property could not be had, then for a judgment for the value thereof; (3) for punitive damages for the alleged willful, wanton, malicious, and unlawful acts of the defendants in taking and retaining possession of the apartment, and the personal property; and (4) for costs. Plaintiff's complaint contains two causes of action, the first being for the taking and retaining possession of the apartment, the second being for the taking and retention of the personal property. To plaintiff's complaint defendants demurred, moved that plaintiff be required to separately state

different causes of action, and also moved to strike various portions of the complaint. The demurrer was overruled, and the motions denied. Thereupon defendants filed separate answers. Defendant Hardy K. Downing denied generally the allegations of the complaint. Defendant Bessie Downing, in her answer, denied that she had unlawfully taken and retained possession of the apartment mentioned, alleged that she was the owner and entitled to possession of the apartment house of which the apartment mentioned in the complaint was a part, and that at the time she took possession thereof plaintiff had vacated and abandoned the same with the intention of removing therefrom. She further alleged in her answer that plaintiff attempted to remove the personal property mentioned in her complaint from the apartment for the purpose of cheating and defrauding defendant of her just rent for the occupancy of the apartment by the plaintiff, and that defendants took and retained possession of the personal property mentioned in the complaint as security for the payment of such rent. Defendant Bessie Downing prayed judgment: (1) That she be adjudged to have a lien upon the personal property held by her until the amount of rent owing to her by plaintiff, was paid; (2) that the complaint be dismissed, and that she be awarded her costs. Upon the issues thus joined a trial was had before the court sitting with a jury. The results of the trial were: (1) The action was dismissed as to defendant Hardy K. Downing; (2) most of the personal property in controversy was returned to plaintiff; (3) the jury rendered a verdict in favor of plaintiff and against defendant Bessie Downing for $1 damages on the first cause of action, and for $20 on the second cause of action on account of personal property not returned to plaintiff; and (4) plaintiff was also awarded punitive damages in the sum of $400. Judgment was duly entered on the verdict. Defendant Bessie Downing appeals.

The thirty-seven assignments of error upon which she relies for reversal of the judgment naturally fall into seven

groups, viz.: (1) Those directed against the order overruling appellant's demurrer to plaintiff's complaint; (2) those directed against the refusal of the trial court to grant appellant's motion to separately state what appellant claims are various causes of action; (3) those directed against the order denying appellant's motion to strike various allegations of the complaint; (4) those directed against the refusal of the trial court to grant appellant's motion for a nonsuit and for a directed verdict; (5) those directed against the refusal of the trial court to give certain of appellant's requested instructions to the jury; (6) those directed against the instructions given to the jury; and (7) those directed against the rulings of the trial court with respect to receiving and rejecting evidence.

Appellant's demurrer to respondent's complaint is both general and special. It is urged that the first cause of action set up in the complaint fails to state facts sufficient to constitute a cause of action because it is alleged in one part thereof that plaintiff at the time complained of was in the actual and peaceful possession of apartment No. 22, and in another part of that cause of action it is alleged that at the time complained of plaintiff was temporarily absent from that apartment. It is contended that one may not be in the actual and peaceful possession of an apartment and at the same time be temporarily absent therefrom—that the one allegation destroys the other. There is no merit to that contention. Plaintiff's right, if any, to recover for the trespass complained of, was not dependent upon whether she was in the actual or constructive possession of the apartment at the time in question. If respondent were rightly in either actual or constructive possession of the apartment, and appellant wrongfully deprived her of such possession to her damage, she would be entitled to recover such damage as she sustained by reason of being wrongfully dispossessed. The general demurrer was properly overruled. The special demurrer to the complaint was founded upon the claim "that several causes of action have

been improperly united." Comp. Laws Utah 1917, § 6568, subd. 5. Appellant contends that a cause of action for a trespass to real estate may not be joined in the same complaint with a cause of action to recover possession of personal property. Numerous cases are cited which appellant claims support her position. Under the rules of common-law pleading appellant's position in such respect is well founded. Our Code of Civil Procedure (Comp. Laws 1917, § 6567) provides that:

"The plaintiff may unite in the same complaint several causes of action, legal or equitable, or both, where they all arise out of:

"1. The same transaction, or transactions connected with the same subject of action."

A transaction, within the meaning of codes similar to ours, has been variously defined as: "Whatever may be done by one person which affects another's right, and out of which a cause of action may arise." *Scarborough* v *Smith*, 18 Kan. 399. The foregoing definition was approved and followed in *McArthur* v. *Moffet*, 143 Wis. 564, 128 N. W. 445, 33 L. R. A. (N. S.) 264. It is also approved in Bancroft's Code Pleading, vol. 1, § 105, pp. 206, 207. "One entire system of acts, or one entire project or deal." *Stone* v. *Case*, 34 Okl. 5, 124 P. 960, 966, 43 L. R. A. (N. S.) 1168.

"In order that causes of action may arise out of a transaction, there must therefore be a negotiation, or a proceeding, or a conduct of business, between the parties, of such a nature that it produces, as necessary results, two or more different primary rights in favor of the plaintiff, and wrongs done by the defendant which are violations of such rights. The proceeding, or negotiation, or conduct of business, must, of course, be a unit, one affair, or else it would not be a single transaction; and yet it must be in its nature complex, for it must be the origin of two or more separate primary rights, and of the wrongs which violate them. In order that this may be so, the facts from which the different primary rights flow must be parts of, or steps in, the transaction; and for the same reason, the wrongful acts or omissions of the defendant must be parts of the same transaction. If a single transaction—that is, a single continuous, and complex proceeding, or negotiation, between the parties—is annalyzed and reduced into its series of acts and defaults, and some of these

acts are the facts from which spring one primary right in favor of the plaintiff, and other acts are the facts from which spring a different primary right in his favor, and others still are the violations or breaches of these rights, these two causes of action do truly arise out of the same transaction." Pomeroy's Code Remedies (4th Ed.) § 367, pp. 488, 489.

Considerable has been written concerning the meaning of the term "transaction" as used in various codes. The courts and textwriters are not in accord as to the meaning that should be given that term, as will be seen from an examination of the foregoing cases and text-writers. The definitions quoted are among those most generally approved. Tested by any of the rules announced in the foregoing quoted definitions, it is clear that the two causes of action set out in plaintiff's complaint arose out of the same transaction. It is alleged in both causes of action that on June 23, 1930, defendants dispossessed plaintiff of her possession of the apartment, and of her personal property which was in the apartment. But one transaction is complained of in the two causes of action. The transaction or acts which dispossessed plaintiff of the possession of the apartment likewise dispossessed her of the personal property which was in the apartment. It is so alleged in the complaint. The special demurrer was properly overruled. Such view finds support in the following cases cited by respondent: *Boulden* v. *Thompson*, 21 Cal. App. 279, 131 P. 765; *Littlefield* v. *Bowen*, 90 Wash. 286, 155 P. 1053, Ann. Cas. 1918B, 177; *Harding* v. *Ostrander Ry. & T. Co.*, 64 Wash. 224, 116 P. 635; *Jenkins* v. *Skelton*, 21 Ariz. 663, 192 P. 249; *Mobile & O. R. Co.* v. *Matthews*, 115 Tenn. 172, 91 S. W. 194; *Moropoulos* v. *C. H. & O. B. Fuller Co.*, 186 Cal. 679, 200 P. 601; *Cohen* v. *Clark*, 44 Mont. 151, 119 P. 775; *Weibush* v. *Jefferson Canal Co.*, 68 Mont. 586, 220 P. 99; *Unfried* v. *Libert*, 20 Idaho 709, 119 P. 885; *Wilson* v. *Sullivan*, 17 Utah 341, 53 P. 994; *Doyle* v. *West Temple Terrace Co.*, 43 Utah 277, 135 P. 103; and *Thomas* v. *Blythe*, 44 Utah 1, 137 P. 396.

It seems to be appellant's position that each of the enumerated articles of personal property which plaintiff alleged were taken by defendants constituted a separate cause of action, and should have been so pleaded, or, if not so pleaded, the value of each article should have been alleged. No cases are cited which support such contention. Taking and retaining possession of all the articles constituted but one continuous act whereby the rights of the plaintiff were affected. There is but one tort. *Wilson* v. *Sullivan*, supra. The fact that only the total value of the personal property involved is alleged did not preclude the defendants, as seems to be contended, from returning a part of the property in mitigation of damages. The value of such property as might be retained by the defendants as well as that which might be returned to the plaintiff was a matter of proof, not of pleading. No error was committed by the court below in denying defendants' motion to require plaintiff to separately state various causes of action. The action with respect to the various articles of personal property constituted but one cause of action.

The motion to strike various parts of plaintiff's complaint is not argued, and is therefore deemed waived. *Vance* v. *Heath*, 42 Utah 148, 129 P. 365, and *Connell* v. *Oregon Short L. R. Co.*, 51 Utah 26, 168 P. 337. By her motion for a nonsuit and for a directed verdict appellant brought in question the sufficiency of the evidence to sustain a verdict and judgment in favor of the plaintiff. A review of the evidence thus becomes necessary. The following facts are not in dispute: On the evening of June 8, 1930, plaintiff rented from the defendant Bessie Downing Apartment No. 22 in the Downing Apartments. Plaintiff moved into the apartment on June 9, 1930. She and her child, together with Vivian Parry and her child, occupied the apartment until June 23, 1930. The apartment consisted of a living room, kitchen, and private bath. It was furnished with linen, dishes, silverware, cooking utensils, frigidaire, and furniture for household keeping. When plaintiff moved

into the apartment, she took with her a radio, various articles of wearing apparel for herself and child, cooking utensils, bedding, table linen, napkins, a picture, and silverware. On June 14, 1930, plaintiff paid appellant $12.50 on the rent. A receipt was given for the amount paid. On the night of June 19th appellant complained to respondent because her child and the child of Mrs. Parry were crying and disturbing the other tenants. At that time appellant informed respondent that she would have to move. Respondent said she would move as soon as she was able to find another place. On June 23d, at about 2:00 o'clock in the afternoon, respondent went to another apartment house and took with her the radio and her valise and the clothing she was wearing. All of the other personal property which she had taken to the Downing apartment was left there, including some food and medicine which she had purchased while living there. On the evening of June 23d she returned to the Downing Apartments for the purpose of getting her personal effects and the other personal property which was there. In the meantime appellant had placed a Yale lock on the door of the apartment theretofore occupied by respondent. Appellant refused to permit respondent to re-enter the apartment or remove any of the personal property therefrom unless and until the rent was paid. Respondent was sick during the time she was at the Downing apartment, and soon after she left the apartment she was taken to the hospital. Appellant knew that respondent was sick, but testified that she did not know that respondent was under the care of a doctor. A few days after the appellant refused to permit respondent to remove the personal property from the apartment, two of respondent's sisters went to the apartment to get some of the child's clothing. Appellant refused to give them the clothing unless the back rent was paid. There is a conflict in the evidence in the following particular: Respondent testified that she rented the apartment for $50 per month, or $12.50 per week. Appellant testified that the rent agreed upon was $50 per

month if respondent rented it for a full month; otherwise the rental was to be $2.50 per day, or $17.50 per week. Respondent testified that on the evening of June 23d, when she returned to get the property which was left in the apartment, she tendered to the maid in charge of the Downing Apartments the sum of $15 as payment of the back rental, but that the maid demanded a payment of $37.50, and informed respondent that she would not be permitted to remove any of the personal property until that amount was paid. The maid denied that respondent tendered her the sum of $15 or any other sum. Appellant testified that she assumed respondent did not intend to return to the Downing apartment when she first went to the other apartment. Mrs. Downing further testified that it was necessary to lock the apartment theretofore occupied by respondent to protect the personal property therein. There are other conflicts in the testimony as to some matters which we do not deem necessary to recite. This is an action at law and, as such, we must view the evidence in the light most favorable to plaintiff. It is urged on behalf of appellant that she had a lien upon the personal property in controversy. Reliance for such lien is had upon the provisions of Comp. Laws Utah 1917, § 3772. It is there provided:

"Every hotel, tavern, or boarding house keeper, or person who lets furnished rooms shall have a lien upon the baggage of his patrons, boarders, guests, and tenants for the amount that may be due from any such persons for such boarding, lodging, or rent, and he is hereby authorized to hold and retain possession of such baggage until the amount so due for boarding, lodging, or rent, or either, is paid."

There is no doubt but that the foregoing provision of our statute enlarges the common-law lien of innkeepers. However, the courts of other jurisdictions having statutes similar to ours seem to be agreed that such statutes do not apply to apartment house owners under facts such as are presented by this record. It is said in 14 R. C. L. § 39, pp. 542, 543, that:

"When it appears that the hirer of rooms in a building devoted to a lodging house secures the exclusive possession of certain rooms therein, over which the lodging house keeper retains no control, the law, in the absence of provision of the contract or extraneous circumstances indicating a contrary intention, will presume that it was the intention of the parties to create the relation of landlord and tenant, and not that of lodging house keeper and lodger. So it has been held that the keeper of an apartment house is not, with respect to suites let for housekeeping, within the protection of a statute providing that the keeper of any hotel, tavern, or boarding house, or any person who rents furnished rooms, shall have a lien upon the baggage or furniture of his patrons for rent."

The case of *Scanlan* v. *La Coste,* 59 Colo. 449, 149 P. 835, L. R. A. 1915F, 664, Ann. Cas. 1917A, 254, and cases therein cited support the rule announced in the text. No case has been called to our attention wherein a different doctrine is announced. The provisions of the statute involved in the case of *Scanlan* v. *La Coste,* supra, were substantially the same as the provisions of our statute. No claim is made, and there is no evidence which tends to show, that appellant acquired any lien upon the personal property involved in this litigation by reason of any agreement or otherwise. The evidence shows that the personal property in question was exempt from execution. No claim is made to the contrary. Appellant failed to establish any right to a lien upon respondent's personal property for the rent which was claimed to be owing for the use of the apartment.

It is next urged on behalf of appellant as to the first cause of action that she was entitled to a nonsuit at the conclusion of plaintiff's evidence in chief and to a directed verdict at the conclusion of all of the evidence because of the failure of plaintiff to prove any actual damage. It is urged that in a case such as this actual damage is of the substance of the action, and that the court below was in error in permitting the jury to find a verdict in the sum of $1. The case of *Noyes* v. *Adams,* 76 Wash. 412, 136 P. 696, 698, is cited in support of such contention. In that case the evidence shows merely the execution of a contract

and a partial breach thereof without any loss occasioned by the breach. The court held that:

"The rule in this jurisdiction is that, in an action for damages, the object of which is to recover damages only, a failure to prove substantial damages is a failure to prove the substance of the issue, entitling the defendant to a judgment."

That case does not aid the appellant in the instant case. The cited case and the instant case are quite different on the facts. The evidence in this case tends to show that plaintiff was lawfully in possession of the apartment at the time complained of; that immediately prior thereto she was using it as her home. There can be no serious doubt but that she intended to return to the apartment for her property, as in fact she did. Her right to the possession of her personal property was, in a measure at least, dependent on her right to the possession of the apartment. The evidence tends to show that plaintiff sustained some damage by reason of being deprived of the use of the apartment, although the amount thereof is not definitely shown. Under such circumstances it was not error for the trial court, under proper instructions, to permit the jury to find damages in the sum of $1.

It is further contended that the evidence in this case did not justify a submission of the question of punitive damages to the jury. No claim is made that plaintiff was not entitled to go to the jury on the question of punitive damages on account of any failure of plaintiff to plead sufficient facts, nor does appellant complain of the instructions given on that question. She contends that the question of punitive damages should not have been submitted to the jury, and that the evidence is insufficient to support a verdict and judgment for punitive damages in the sum of $400 or any amount. The claim is made that appellant in good faith believed she had a lien on the personal property in question for the unpaid rent, and so believing in good faith refused to deliver the property to

the plaintiff until such time as the rent was paid. The jury, however, evidently did not believe the facts to be as claimed by appellant. Otherwise, under the court's instructions, they were not at liberty to award plaintiff punitive damages. This being an action at law, we are bound by the findings of the jury upon conflicting evidence. The plaintiff testified that the rent agreed upon was $12.50 per week, and that on June 23d she tendered to defendant's maid who had charge of collecting the rent the sum of $15, that the maid told plaintiff that she could not get any of her personal property until she paid $37.50. Upon any theory of the case, the amount owing for rent was less than $37.50. The most that could be owing for rent under the contract as testified to by appellant was $25.00, $2.50 per day for 15 days or $37.50, less $12.50 which was admittedly paid. There is other evidence which tends to show that the appellant was very exacting, if not, indeed, designedly oppressive. Appellant testified that she knew plaintiff was ill, although she denied that she knew that plaintiff was under the care of a physician. Plaintiff was not only deprived of her clothing, bedding, household utensils, the clothing and bedding of her child, but also of her medicine, syringe, glasses, and food which she had on hand. Many of these articles could not well be said to constitute baggage. The jury may have believed that some of the latter articles were of no value to any one but the plaintiff and that the taking and retention of such articles "was wilful, wanton, malicious and unlawful, and for the purpose and with the intent to harass and punish plaintiff and to extort from her money which was not owing to the defendants, or either of them," as alleged in the complaint.

It is further urged that the verdict and judgment for the sum of $1 on the first cause of action, and $20 on the second cause of action, are merely nominal, and as such do not support a judgment for punitive damages. Cases are cited from a number of jurisdictions which hold that a judgment for merely nominal damages will not support a judgment

for punitive damages. A different rule prevails in other jurisdictions. Cases dealing with the question of what kind of judgments will, and what kind of judgments will not, support a judgment for punitive damages, are annotated in 33 A. L. R. 384-417. It is not necessary for us in the instant case to decide which line of authorities should be followed in this jurisdiction. It is true that the amount of the verdict and judgment in this case might be said to be nominal. However, the amount originally involved in this litigation was substantial. Before the question of damages was submitted to the jury, the learned trial judge held that under the evidence appellant did not have a lien on the personal property involved in this litigation. Thereupon appellant delivered most of the personal property to the plaintiff. Respondent claimed that some of the property was not returned. Appellant claimed to the contrary. The judgment for $20 is the value of the property as fixed by the jury for the property not returned. As a result of the litigation, plaintiff recovered a substantial amount of property in addition to the small money judgment. The rule contended for by appellant has no application to the facts disclosed by the record in this case.

It is also urged on behalf of appellant that the evidence does not support a verdict and judgment for $20 on the second cause of action because the evidence fails to disclose the value of the property which plaintiff claims defendant failed to deliver. There would be merit to that contention were it not for the stipulation entered into by counsel during the course of the trial. The record discloses that considerable discussion was had by counsel and the court about the stipulation which finally culminated in counsel for plaintiff saying that:

"If I adopt the situation as the court just stated it, then the jury can say that the only article that was proved to be missing was the small flat iron, and that it was worth a certain sum, four dollars or five dollars, whatever they place, and my reason for cutting that down to twenty dollars is very apparent to the court."

To which counsel for defendant responded:

"I appreciate counsel's position, and I will go this much further: If the Jury believes any of the articles designated were missing, designated as missing, and if they believe that those artices found there are in the possession of the defendant, they may assess twenty dollars, even though it is a flat iron.

"The Court: Then you will prepare an instruction to cover that.

"Counsel for Defendant: Of course, without waiving the stipulation and my theory of the feature of the lien, I will prepare instruction on that theory."

While the stipulation is not as definite as might be desired, it precludes appellant from attacking the verdict and judgment of $20 upon the grounds urged. The court was not in error in instructing the jury that, if they found any of the missing articles were retained by the defendant, they should award plaintiff damages on the second cause of action in the sum of $20. From what has been said it follows that the court properly refused defendant's request that the jury bring in a verdict of no cause of action. The assignments with respect to the admission and rejection of evidence are not argued, and are therefore deemed waived.

The judgment is affirmed. Respondent is awarded her costs.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.