McCOY v. CONKWRIGHT et al.

No. 35139.   June 3, 1952.

*245 P. 2d 89.*

546

Manatt, Knight & Knight, Tulsa, for plaintiff in error.

Campbell & Latting, Tulsa, for defendants in error.

BINGAMAN, J. This is an action to recover brokerage commissions brought by plaintiff, W. D. McCoy, against the defendants, Grace Woodward Conkwright and Frank C. Conkwright. The trial court sustained the demurrer of defendants to plaintiff's evidence, and plaintiff appeals.

From the record it appears that McCoy, an experienced real estate dealer in the city of Tulsa, was employed by defendants to promote the sale of lots in an addition to the city of Tulsa, which they proposed to put on the market. It appears that they contemplated putting two other additions on the market after the sale of the lots in the first addition had been substantially completed, the additions being known as Gracemont First, Second and Third, respectively. By the terms of the written contract of employment plaintiff was given the exclusive agency for the sale of the lots in Gracemont First Addition for a period of twelve months from April 23, 1947, the date of the contract, at a commission of 20 per cent, the contract providing that the price on the lots was subject to the approval of the defendants and that plaintiff should pay for all advertising and write up all the notes, mortgages, deeds and bills of sale, subject to the approval of defendants. The contract further provided as follows:

"It is understood and agreed that ninety per cent (90 percent) of said lots must be sold within the twelve months period and in the event these lots are sold within the allotted time, then the parties of the first part agree to issue a new contract on Gracemont Second Addition for six months from date said plat is recorded."

Under this contract plaintiff proceeded to advertise and attempt to sell lots in Gracemont First Addition. He testified to numerous difficulties encountered by him in putting the addition on the market, due to the fact that the streets had not been graded or improved, there were no water lines, telephone lines or gas lines in the addition and there was no bus service in the vicinity; that due to his efforts and the efforts of defendants some of the streets were laid out and graded and some of the utilities brought into the addition, but that due to the delay caused by these difficulties he did not effect a sale in the addition until September, 1947. At the suggestion of defendants he interested certain building contractors in the purchase of lots and building of houses in the addition. Four of these builders constructed a number of houses on lots purchased by them, and the houses were sold either by the builders or by plaintiff, apparently almost as fast as they were built. If further appears from the evidence that at the end of the year which the contract was to run plaintiff had not sold 90 per cent of the lots, and at that time defendants terminated his contract. Apparently some friction developed between the parties and plaintiff was notified by defendants that he had no further right in or about their property.

Prior to the placing of Gracemont First Addition on the market all three proposed additions had been surveyed and plaintiff had made a plat showing all three. At the trial of the case

plaintiff testified to various oral agreements had with defendants prior to the expiration of the written contract, extending the time within which he was to comply with the written contract and giving him the right to sell lots in Gracemont Second Addition, although that addition had not been placed on the market, and no plat thereof had been filed with the county clerk of Tulsa county. He also testified that he advised the defendants that the four builders whom he had procured to buy lots in the first addition were desirous of obtaining lots in the second addition, and that one of them had pointed out eighteen lots which he desired to buy and build upon. The trial court held that these oral contracts and negotiations were void as attempts to vary the terms of the written contract, and in the brief of defendants cases supporting the trial court's view are cited. Apparently plaintiff became convinced of the correctness of the views of the trial court, for in his reply brief he makes the following statement:

"It is true that in the course of pleading, as well as in the introduction of evidence, plaintiff in error referred to the oral agreements between the parties but at the conclusion of such evidence the plaintiff dismissed all claims and causes of action based upon the alleged oral agreements and asked for judgment only for commissions on sales pursuant to the written contract for which arrangements had already been worked out between the buyers and the owners prior to the attempted cancellation of the written contract by the defendant."

Plaintiff contends, however, that certain lot sales made by him in the first addition, subsequent to the termination of his contract, and all sales made in the second subdivision to the four builders whom he had secured as purchasers in the first subdivision, should be credited to him, and claims commissions on all such sales. We are unable to agree with this contention.

From the evidence it appears that the sales made of lots in the first addition, after the termination of plaintiff's agency, were made to persons who had not been introduced to defendants and whom defendants were not advised were negotiating with plaintiff at the date of the termination of the contract. Such introduction or notice to the owner is a requirement made in all the authorities cited by plaintiff, such as Worley v. Carroll, 110 Okla. 199, 237 P. 120; Harris v. Owenby, 58 Okla. 667, 160 P. 596, and Payton v. Maupin, 202 Okla. 574, 216 P. 2d 231. Such introduction to or knowledge by the landowner that the agent is dealing with a prospective customer appears to be generally held to be prerequisite to the recovery of commissions by brokers where the sale is made after his agency has terminated. The general rule is stated in 12 C. J. S., p. 152, §66, as follows:

"While, to avoid liability for commissions by revocation of the broker's authority, it is necessary that the principal shall notify the broker of the revocation before performance by the latter of the contract of agency, it is also essential to the recovery of commissions for procuring a purchaser or lender before revocation that the principal shall have knowledge or notice, prior to revocation, of the procuring of such purchaser or lender, and the broker is not entitled to recover where, notwithstanding he has procured a purchaser prior to revocation, he does not bring the transaction to the principal's attention prior to receiving notice of revocation."

In the instant case the record shows that at least in one instance the final contract of sale was never submitted to defendants, plaintiff testifying that he considered it useless since defendants had refused to make sales to two other customers produced by him after the revocation of his authority. In the absence of any showing that the names of the customers and the fact that plaintiff was dealing with them was communicated to defendants prior to the revocation of his authority, plaintiff was not entitled to commissions where his sales were rejected and sales were

subsequently made to the parties by defendants.

Plaintiff contends that because he brought into the addition the four building contractors who constructed and sold houses in the first addition, and who subsequently purchased lots in the second addition when it was put on the market, the builders became his customers and his agency as to them extended to any purchases made by them in the future from defendants, in either the first or second addition, and whether such sales were due to his efforts or not. No authority has been cited in support of this contention, and we know of none. Certainly as to sales in the second addition, the contention must fail, since under the written contract plaintiff had no right to sell property or contract the sale of lots in the second addition. It is conceded that a plat of that addition was not filed in the office of the county clerk and the lots in the addition offered for sale until some two years after the revocation of plaintiff's contract, and it is not contended that plaintiff sold 90 per cent of the lots in the first addition during the term of his contract, nor did he demand that defendants execute the further contract therein provided for. His contention at the trial that he was entitled to commissions on sales in Gracemont Second Addition was predicated largely on the alleged oral contracts with defendants which he expressly renounces in his reply brief. The contention that the builders being once his customers were always his customers, and that he was entitled to a commission on any sales thereafter made to them, is wholly untenable.

At the trial of the case the defendants admitted that commissions on certain lots, the sale of which was completed after the expiration of the contract but which had to their knowledge been in process at the time the contract was terminated, were due and owing to plaintiff and they paid this money into court. The evidence failing to support plaintiff's claim for further commissions, the trial court did not err in sustaining the demurrer of the defendants thereto.

Affirmed.

WELCH, CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.