Vera L. HARRIS, Plaintiff in Error,

v.

Mrs. J. Richard CONWAY, Defendant in Error.

No. 38244.

Supreme Court of Oklahoma.

Feb. 24, 1959.

As Corrected June 16, 1959.

Rehearings Denied June 16 and July 14, 1959.

Application for Leave to File Second Petition for Rehearing Denied Sept. 15, 1959.

Paul Edwards, Tulsa, for plaintiff in error.

Wheeler & Wheeler, John M. Wheeler, John Wheeler, Jr., Robert L. Wheeler, Tulsa, for defendant in error.

BLACKBIRD, Justice.

This appeal concerns an action by defendant in error, a real estate broker, hereinafter referred to as plaintiff, to recover from plaintiff in error, hereinafter referred to as defendant, a broker's commission of $2,750, or 5% of the $55,000 sale price of defendant's home as the site of a future motor vehicle service station.

The principal facts forming the background of the action are virtually undisputed and, for the purpose of dealing with the issues of this appeal, are unnecessary to detail, except as hereinafter related. Defendant, a widow, has apparently, at all times material to this action, lived in the home alone. One of her married sons is Clarence Ganders, a service station operator residing elsewhere in Tulsa. Ever since the death of defendant's husband, approximately ten years ago, various oil companies, including the D-X Mid-Continent Company and its successor, D-X Sunray, usually referred to herein merely as "D-X", have evidenced interest, at different times during said period, in obtaining defendant's homesite for the location of a service station to be constructed thereon. Defendant had rejected any and all offers made to purchase the property until a Tulsa investor, named Ray B. McBride, who had obtained sites for other D-X stations, asked plaintiff to see if she could persuade defendant to sell it. It appears that plaintiff's endeavors to do this started in the Fall of 1956; and, on December 11, 1956, defendant signed a writing purporting to give plaintiff, for a period of thirty days from said date, "the right to sell" the property for a total price of $55,000, and providing, among other things, for payment to plaintiff of a 5% commission on such sale. Later, the defendant refused to let plaintiff effect such sale of the property, and sold it to her son, Clarence Ganders. Upon defendant's refusal to pay the commission prescribed in the agreement evidenced by the above mentioned writing, plaintiff instituted the present action to recover it. After trial by jury, verdict and judgment were for plaintiff in the amount sued for; and defendant perfected this appeal.

Under her first assignment of error, defendant argues that the trial court committed errors as follows: (1) In overruling, in part, a motion she filed asking that plaintiff be required to make her petition more definite and certain; (2) In overruling her demurrer to said petition; and (3) In overruling her demurrer to plaintiff's evidence. The argument (applicable also to defendant's challenge of the sufficiency of the evidence as a whole, by motion for a directed verdict) is based on the premise that since the property involved was not sold to plaintiff's customer, Ray McBride, his failure to enter into an enforceable written contract to purchase it, was fatal to plaintiff's cause of action. In support of this argument, defendant cites Roberts v. Gardner, Clarke and Sullivan, Okl., 275 P.2d 245, Gilliland v. Jaynes, 36 Okl. 563, 129 P. 8, 46 L.R.A., N.S., 129, Reynolds v. Anderson, 37 Okl. 368, 132 P. 322, 46 L.R.A.,N.S., 144, and other cases. On the other hand, plaintiff says that the rule these cases stand for is not applicable; and asserts, as the applicable one, her Proposition No. 1, as follows:

"Where a broker procures a purchaser ready, willing and able to purchase at the price and under the terms prescribed by seller, and the owner refused to complete the sale the broker has earned his commission and is not required to tender a written contract or to present the buyer to seller."

This proposition is undoubtedly correct as an abstract proposition of law (see the discussion in Equitable Life Assur. Soc. of United States v. Home, 184 Okl. 542, 88 P.2d 887, 888 and 890, and Bleecker v. Mil-

ler, 40 Okl. 374, 138 P. 809); but is it of adequate scope to furnish a solution of the issues in this case? In the preliminary portion of her brief, plaintiff concedes arguendo that her agreement with defendant (evidenced by the hereinbefore described writing of December 11th) gave plaintiff no exclusive right to sell the property even during the 30-day period prescribed therein, so that, if defendant sold the property herself before plaintiff's performance under said agreement, then defendant was not obligated to pay plaintiff the agreed commission. The argument of neither of the parties reaches the important question of "notice", which can be a very important one in determining the good faith of the owner of the property in a case like the present one, where he, or she, maintains that she revoked the broker's authority before the latter's performance. The rule, as stated in 12 C.J.S. Brokers § 75, is as follows:

"A broker employed under a contract not giving him the exclusive right to act, nor obligating the owner to pay a commission on a sale or other transaction negotiated by himself alone, is not entitled to a commission where, before performance and notice thereof by him, the transaction which he is authorized to negotiate is negotiated by the principal himself without the aid of the broker."

See Longmire v. Webber, 109 Okl. 49, 234 P. 620, 621; Des Rivieres v. Sullivan, 247 Mass. 443, 142 N.E. 111, and Rowe v. Koutrouba, 263 Mass. 493, 161 N.E. 412.

Cases in which there is a conflict in the evidence on the question of whether the owner of the property negotiated its sale without the aid of the broker, before he knew, or had information from which he should have known, that the broker had procured a purchaser for it, are made less difficult of determination in some states by decisions based upon statutes, or apparently upon general principles of law, to the effect that the owner must, in order to avoid liability for payment to the broker of his commission (under the principles above referred to) prove that the purchaser he procured was bound by an enforceable contract of purchase, before he was apprised that the broker had also procured someone ready, willing and able to purchase it. See Hartig v. Schrader, 190 Ky. 511, 227 S.W. 815, and Hawks v. Moore, 27 Ga. App. 555, 109 S.E. 807. In the first cited of these cases, the court said [190 Ky. 511, 227 S.W. 817]:

"If an owner might defeat his broker in the collection of commissions by merely entering into an oral agreement with another to sell his property, which agreement was in no sense enforceable against him, an easy method of escaping such payment would be afforded."

If we applied the rule of the above-cited Kentucky and Georgia cases requiring the owner to have an enforceable contract of sale with the purchaser procured by him, before she could effectively revoke her agreement to let the broker sell it, then, in the present case, if the evidence shows Ray McBride's willingness, readiness and ability to purchase it, since, according to defendant's testimony, plaintiff telephoned her saying she had a buyer and defendant thereupon (in the same telephone conversation) told her that she had decided to sell it to her son, Clarence Ganders, then we might readily and justifiably determine that the trial judge not only did not err in overruling defendant's motion for a directed verdict, but that he could have gone further and sustained plaintiff's motion for a directed verdict, because it was never shown that any memorandum of such an agreement between defendant and her son was reduced to writing and signed, or that any other prerequisite of an enforceable contract between them for the conveyance of such real estate existed before December 19, 1956. However, irrespective of any such requirement, we are of the opinion that the verdict and judgment in the present case are sufficiently supported by the evidence. We say this because, after carefully examining the record, we are convinced that there was sufficient evidence of facts and circumstances, together with permissible inferences therefrom, to sustain a conclusion by the jury not

only that plaintiff had a purchaser ready, willing and able to buy the property, but that defendant knew, or had information from which she should have known this, *before* she (defendant) ever completely decided to sell it to her son, Clarence Ganders, and attempted to revoke, or rescind, her agreement with plaintiff. See and compare McCoy v. Conkwright, 206 Okl. 545, 245 P.2d 89, 91, Payton v. Maupin, 202 Okl. 574, 216 P.2d 331, and Harris v. Owenby, 58 Okl. 667, 160 P. 596. See also Smith v. Gibraltar Oil Co., 10 Cir., 254 F.2d 518, 520–522. We are of the opinion that the jury may very justifiably have concluded from the evidence as a whole, that defendant never definitely decided to sell to her son and revoke her agreement with plaintiff until December 14th; and, that defendant came nearer the truth, than expressed in some of the testimony, when she testified as follows:

"Well, Mrs. Conway kept insisting that I not sell to the family and kept calling and coming out to see me and *on the 14th,* I called her and *I said definitely* I am going to sell to my son, and this is it." (Emphasis ours.)

By December 14th (1956), plaintiff, with defendant's permission, had not only gone to the office of the loan company (which had it) and picked up defendant's abstract of title to the property, but she had placed it in the hands of an abstracter to be brought up to date. Also, by that time, McBride had written D-X Sunray the following letter, dated December 13, 1956:

"D-X Sunray Oil Company,
 Tulsa, Oklahoma.
"Attention: Mr. Madison E. McGrew,
 Division Real Estate Manager.
"Gentlemen:
"Enclosed herewith are five (5) Copies of Station Site lease which I a*m*d my wife have *k*nitialed, to signify that the terms thereof are satisfactory to us and that we will execute the lease if and when we are able to acquire good title to this property, for the purchase price of $55,000.00.
"In connection with the description of the premises, we are advised that the

present land owner is having a new survey made which may change the metes and bounds description somewhat, and it is understood that the description to the lease shall be amended to conform to the survey, if necessary to correctly describe the property.

"The land owner, Mrs. Harris, insists that I complete the purchase of this property, if at all, before December 31, of this year. Since I do not want this property unless you desire to lease it, I request that you get the lease approved and signed by your company, and return to me as soon as it is practical, and in all events in time for me to complete the purchase before the end of the year.

"Very truly yours,
"Ray B. McBride."

The lease contract inclosed in the above letter was drawn on one of D-X Sunray's printed forms, to be entered into between said company, as lessee, and McBride and his wife, as "lessor", covering the lot occupied by defendant's residence, and providing for said company's occupancy thereof for a period of 20 years, beginning March 1, 1957, at a rental of $290 per month. It provided for D-X to have an option, at the end of said term, to purchase the property for the sum of $60,000. A typewritten provision that had been added to the printed lease form and initialed by McBride and his wife, was as follows:

"This lease is entered into and executed on the part of the lessor based on the assumption that said lessor will be able to acquire the property hereinbefore described in Covenant #1 for for the purchase price of $55,000.00. Should lessor be unable to acquire a free and unencumbered fee-simple title to said premises, then said lessor will not be required to execute a purchase of said property under his option contract with the present land owner; but, otherwise, said lessor will consummate the purchase of said property and deliver possession thereof unto lessee named herein in accordance with the

terms and conditions of this instrument."

Despite the above evidence and the testimony of plaintiff and McBride to the effect that he was ready, willing and able to purchase the property on defendant's terms as soon as defendant decided upon them, and they were immediately communicated to him by plaintiff, defense counsel argues that the evidence fails to show that there was ever a time—before defendant told plaintiff she had her own buyer (Ganders)—that McBride was ready to carry out the purchase on terms acceptable to defendant after her tax consultant, Vetters, advised her, on account of income tax liability, not to accept a cash down payment as large as the $16,000 specified in the hereinbefore described "listing" agreement memorandum of December 11th. In support of this argument, defense counsel refers to McBride's statement in the above quoted letter to D-X that he did not want the property if said Company did not desire to lease it, and the testimony of D-X's Southern Division Real Estate Manager, Mr. McGrew, that the lease inclosed in said letter was never approved, or accepted, by his company, and to an earlier tentative form of lease contract, introduced in evidence, as plaintiff's Exhibit No. 4, that had been executed by said company and forwarded to McBride describing the same property, but providing for a 15-year term, beginning August 1, 1956, at a rental of only $196 per month, and containing a provision giving said company an option to purchase it from the McBrides for only $40,000. The representation and inference from this argument is that since the only tentative contract D-X had actually approved, gave it, as proposed lessee of the property, the privilege of purchasing it for $15,000 less than the amount McBride testified he was willing to pay for it, McBride would never really, or in fact, have been ready and willing to have paid $55,000 for it. Counsel's argument omits mention of the fact that the option provisions in both the lease contract forms were not effective, according to their plain wording, until the end of said lease's primary term, at which time, even under the

earlier one (which apparently was drafted before plaintiff ever undertook to effect the property's sale) the. lessor would already have received a minimum of $35,280 in rent from the property. If such contract had gone into force and, in addition to having collected $35,280 in rentals during its "primary" term, McBride had sold the property to D-X, under the option provision for $40,000, then it would appear that he'd have made a profit on the transaction, even if he'd had to pay $55,000 for the property. We think the argument advanced is wholly insufficient to show that the evidence adduced by plaintiff on this point was nullified, or outweighed by evidence to the contrary. It is also our opinion that the evidence contains no impediment to the reasonable assumption that had defendant not refused to carry out her original agreement to sell the property through plaintiff, and McBride had become the owner thereof, D-X would have as readily leased the lot from him, as it later did from Clarence Ganders. From our examination of the evidence and in view of our determination that it was sufficient to support a conclusion that defendant knew, or should have known before she positively, or definitely, apprised plaintiff she had a buyer of her own, that plaintiff already had a purchaser who was ready, willing and able to purchase the property on defendant's terms, we hold that it was unnecessary for plaintiff to have introduced, or formally presented, McBride to defendant, or to have obtained from him an enforceable written contract to purchase it on such terms, in order to have earned the commission involved herein. It therefore follows that proof of such facts was not essential to plaintiff's cause of action, and that the trial court committed no error in not requiring her to plead them, or in overruling defendant's demurrer to plaintiff's evidence and motion for a directed verdict.

 Defendant's Proposition No. 1, under her "Second Assignment of Error" is that the trial court erred in admitting in evidence, as plaintiff's Exhibit No. 4, and over her objection, the above-mentioned lease contract form which prescribed a term be-

ginning August 1st, 1956, and which, though approved by D-X, was never executed by the McBrides, lessor named therein, or used. She argues that this exhibit was wholly irrelevant and immaterial to the issues. Plaintiff says it was introduced to help show D-X's desire to acquire the lot, and that, as evidence of such fact, it was merely cumulative. While this exhibit was perhaps some indication that D-X had been wanting the lot for some time before defendant agreed (with plaintiff) to sell it, it is unnecessary for us to determine whether or not such fact was either essential or material to plaintiff's case. Defendant's counsel says: "It most probably mislead the jury to the owner's prejudice because it obviously rattled everyone else in court, including the trial Judge." While a judgment may be reversed for error in the admission of incompetent, though cumulative, evidence, if such error was prejudicial (Douvas v. Newcomb, Okl., 267 P.2d 600) this Court generally regards a determination of whether the verdict is supported by sufficient, competent evidence, as a salient criterion for measuring the probability of prejudice from the admission of incompetent evidence. Hostutler v. State ex rel. Com'rs of Land Office, Okl., 302 P.2d 983; Mid-Continent Petroleum Corporation v. Fisher, 183 Okl. 638, 84 P.2d 22. From our examination of the record herein, we have determined that the verdict was amply supported by the evidence and that it is improbable that it would have been different had the alleged error not occurred. We must therefore conclude that such error, if any, was harmless, and no cause for reversal.

■ Defendant's Proposition No. 2, under her "Second Assignment of Error" concerns a ruling by the trial court during the cross examination of the witness, Ray McBride. After he had testified that, on December 14th, the D-X Company had agreed to lease the lot on the terms he presented to it, his cross examination continued as follows:

"Q. What were those terms?

"A. Oh, I don't remember—

"Mr. Wheeler: We move that be stricken, and object to that question.

"The Court: Sustained.

"Me. Edwards: Exception."

It is defendant's contention that if the trial court had not made the ruling above shown, the witness would have testified to the "terms of a lease Mr. McBride testified D-X had approved, which would have been repudiated by testimony from McGrew and by the proposed, written leases later introduced." We have no way of knowing what answer McBride would have given to the above quoted question, if attorney Wheeler (for the plaintiff) had not interrupted him by interposing the above quoted motion to strike, except as indicated by his remark: "Oh, I don't remember—". In at least one previous case, we have declined to reverse on account of alleged prejudice from the trial court's refusal to allow a witness to testify, where there was nothing in the record to show what his testimony would have been. See Boone v. State ex rel. Dept. of Highways, Okl., 261 P.2d 581. Here also, counsel's charge of prejudice to his client from the trial court's ruling is not sufficiently supported by the record that we can say, or hold, that same constituted an abuse of discretion and was therefore reversible error. See Layton v. Purcell, Okl., 267 P.2d 547, and the authorities cited therein.

■ Under Proposition 1 of her "Third Assignment of Error", defense counsel complains of the trial court's giving of its Instruction No. 3. The contention seems to be that said instruction assumed the existence of a contract between the plaintiff and defendant, when, in fact, that was an issue for determination. It is also said that since the term "the contract" appears several times in the instruction and there were pleadings and testimony in the case that dealt with two contracts—one for the sale of the property, and the other for plaintiff's employment as a broker—said instruction was ambiguous and confusing, and prevented the jury from giving proper consideration to the issues. We do not concur in counsel's view of this instruction. While it does not ap-

pear to be perfect in every respect, it is not defective in the respects claimed. We think it clearly and fairly submits to the jury the question of whether or not there was an executed contract between the plaintiff and defendant. We also think that the wording of the instruction made it plain that the only contractual relationship it referred to was the one between the plaintiff and defendant. In view of our announced conclusion as to the sufficiency of the evidence to support the verdict, and our opinion of this instruction and others given, counsel's argument fails to sufficiently demonstrate said instruction's prejudicial effect to warrant reversal on that ground. In this connection, see Shultz v. Dillard, Okl., 262 P.2d 139, and Threadgill v. Anderson, Okl., 303 P.2d 297.

 Defendant's Propositions 2 and 3, under her "Third Assignment of Error" claim error in the trial court's refusal to give her requested Instructions Numbered 1 and 2. No. 1 would have required the jury, before returning a verdict for plaintiff, to have found that she had obtained an enforceable contract in writing, from McBride, to purchase the property involved, or that she had presented him to defendant and an oral agreement between the two for his purchase had been accepted by defendant. We think it has already been demonstrated herein that, in view of the evidence that McBride, plaintiff's customer, was ready, willing and able to purchase the property on defendant's terms, and in view of the sufficiency of the evidence to support a conclusion by the jury that before defendant's untimely attempt to revoke plaintiff's agency, she knew, or should have known, plaintiff had such a purchaser and had arranged a meeting (which never occurred) between defendant and McBride for the execution of an enforceable purchase contract, it was unnecessary for plaintiff to make the proof which defendant's requested Instruction No. 1 would have required. The discussion in the Equitable Life Assurance Society Case, supra, hereinbefore referred to, demonstrates that the earlier cases again cited by defendant under this Proposition do not apply; and, because of differences in their

facts, neither do the more recent cases of Kennedy & Kennedy v. Vance, 201 Okl. 80, 202 P.2d 214, and Kennedy v. Hart, 187 Okl. 169, 101 P.2d 808. The matters to which defendant's requested Instruction No. 1 pertained were therefore not a part of the fundamental issues of the case. The same conclusion applies to the matter of plaintiff's claimed dual capacity as agent for both McBride and the defendant, to which Defendant's Requested Instruction No. 2 pertained. Such claim was a matter of affirmative defense, not raised in the pleadings, nor, as far as the record shows, relied on, until said instruction was requested. On the basis of this record, we do not think it was a fundamental issue in the case. See Northwest Land & Colonization Co. v. Addington, 98 Wash. 576, 168 P. 164, Schwartz v. Meschke, 92 Kan. 650, 141 P. 175, and other cases cited in 12 C.J.S. Brokers § 110, at footnotes 45 and 47. As far as the record discloses, defendant saved no exception to the trial court's refusal to give these requested instructions. Title 12 O.S. 1951 § 578 specifies how this must be done, and compliance with said statute is necessary to obtain a review of such claimed errors, except for "fundamental error." See National Tank Co. v. Scott, 191 Okl. 613, 130 P.2d 316, and other cases annotated under 12 O.S.A. § 578. Since we have determined that neither of the refused instructions pertain to fundamental issues, and it is our opinion, from a review of the instructions given that, in the light of the evidence, they fairly and reasonably covered the fundamental issues in the case, we give no further consideration to the trial court's said refusal as a ground for reversal of the judgment appealed from.

 As defendant's argument under her "Fifth Assignment of Error" has already been answered by our foregoing conclusions on substantially the same arguments under other "Assignments", there is left for decision only her contention, under her "Fourth Assignment * * *" that plaintiff failed to prove payment of any intangible property tax on her broker's commission here involved. Plaintiff's cause of

action for the commission did not accrue until during the month of December, 1956, and judgment in the case was entered October 1, 1957. Plaintiff's counsel say that her claim was an unliquidated one and consequently it was not taxable, citing Cole v. Harvey, 200 Okl. 564, 198 P.2d 199, and Cravens v. Hughes, 207 Okl. 503, 250 P.2d 877, 882. Both of the cited cases referred to the definition of a "liquidated account as one, the amount of which is agreed upon by the parties, or fixed by operation of law." Neither of said cases involved a claim of a definite sum whose amount was fixed in one of the ways mentioned in the definition, like the present case does. They are therefore not applicable. In this connection see Rogers v. Goodwin, 208 Okl. 110, 253 P.2d 844, 846, Edmonds v. White, 203 Okl. 231, 219 P.2d 1007, 1009, and Dunlap v. Spencer, 191 Okl. 557, 131 P.2d 994. Plaintiff's counsel call attention to the fact that this action was commenced January 10, 1957. They further say that the taxable status of the claim or account involved was determined as of that date, but that no tax was due on it until March 15, 1958. The cases of Rutter v. Heatly, 198 Okl. 591, 180 P.2d 822, and Day & Whitt Furniture Co. v. Welbilt Appliance Corporation, 193 Okl. 69, 141 P.2d 267, 268, cited by counsel, are authority for the first part of their statement, and the latter case says that the term "tax year", as used in Tit. 68 O.S.1951 § 1515, means "fiscal year", and holds that said section:

> "* * * places upon the plaintiff the duty to allege and prove assessment and payment of such taxes only for those fiscal years during which he was the owner of the account, and does not apply to any fiscal year subsequent to the commencement of the action."

It could not successfully be argued, on the basis of the quoted case, that, at the time of the commencement of this action in January, 1957, plaintiff had not owned her claim against defendant during any fiscal year, and that therefore it was not taxable under the wording of Sec. 1515, supra. The action there involved was commenced in May, 1940, and the 1939 Act, as noted therein, did not become effective until July 1, 1940. The situation here is similar to that in Mayor v. Bennett, 199 Okl. 579, 189 P.2d 186, where the account sued on came into existence in October, 1941, and the action on it was commenced in March, 1942. There we said the account was subject to assessment January 1, 1942; held that plaintiff should have proved compliance with the Intangible Tax Law; and remanded the case to the trial court with directions for the rendition of judgment after a hearing in said court on the matter of his compliance, with the costs of the appeal to be taxed against plaintiff. We have followed the same procedure in other more recent cases. See, for instance, Rogers v. Goodwin, and Edmonds v. White, both supra.

From what we have said, it is obvious that we have found in the assignments of error properly presented and dealt with herein, no cause for reversing the trial court's judgment on the merits of this case, but we have also determined that since the record contains no proof of plaintiff's compliance with the Intangible Tax Law (as she alleged), it fails to establish a jurisdictional prerequisite to rendition of judgment in her favor. We therefore remand this case to the trial court with directions to vacate the judgment appealed from, to tax the costs of this appeal against plaintiff, and to determine whether or not she has in fact complied with the Intangible Tax Law. Said court is further directed to enter judgment in her favor if she is adjudged to have so complied, but, if she is adjudged to have not complied, to dismiss the action without prejudice.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, JACKSON, IRWIN and BERRY, JJ., concur.

WELCH and JOHNSON, JJ., concur in result.

Rehearing denied July 14, 1959; BLACKBIRD, J., dissenting.